PHILLIPS, PLAINTIFF IN ERROR, .v. CITY OF DENVER, DEFENDANT IN ERROR.

1. POWERS OF MUNICIPAL CORPORATION.

A municipal corporation can exercise only such powers as are granted to it by its charter or by the general law of the state, either in express words or by necessary or reasonable implication, or such as are incidental to the powers expressly granted, or such as are essential to the objects and purposes of the corporation.   A municipal corporation, under a general grant of authority, cannot adopt ordinances which infringe the spirit or are repugnant to the policy of the state as declared in its legislation.    *City of Durango v. Reinsberg*, 16 Colo. 327.

2. MUNICIPAL ORDINANCES—FURTHER TEST OF VALIDITY.

An ordinance expressly authorized by specific and definite legislative authority will be upheld unless it conflicts with the constitution of the state or nation; but an ordinance which the municipality assumes to pass by virtue of its incidental powers, or under a general grant of authority, will be declared invalid, unless it be reasonable, fair, and impartial, and not arbitrary or oppressive.

3. LIVERY STABLE, WHEN a NUISANCE.

A livery stable in a town or city is not, *per se*, a nuisance, though it may become a nuisance, if not constructed, kept and used in a proper manner.

4. FOREGOING PRINCIPLES APPLIED.

An ordinance prohibiting the location of a livery stable in any block in

which a school building is situated, or in any block which is oppo-
site to a block in which a school building is situated, without ref-
erence to the manner in which such stable is constructed, kept or
used, and without further specifying the distance, cannot be regarded
as reasonable, and so cannot be upheld as valid under a general or
incidental grant of authority to the municipality assuming to pass it.

*Error to the County Court of Arapahoe County.*

ACTION for violation of city ordinance.   On the trial judg-
ment was rendered as follows:

"That said defendant be fined in the sum of ten dollars
and costs, and in default of the payment of the same that the
said defendant be imprisoned in the city jail of the city of
Denver, until said fine is fully satisfied, not to exceed five
days."

Defendant brings the cause to this court by writ of error.

This action was tried in the county court upon an agreed
statement of facts as follows:

"That this action was originally brought before S. D.
Barnes, Esq., police magistrate of the city of Denver, to
recover fine and costs for the violation of ordinance No. 8,
of the series of 1888, and entitled 'A bill for an ordinance
to amend section 46, of ordinance No. 23, of the Ordinances
of the city of Denver, of the series of 1885, entitled "Pub-
lic Health,"' signed and approved July 11, 1885, and also
known as section 1, article 7, of chapter X, of the Laws and
Ordinances of the City of Denver, published by authority
in 1886, which ordinance is as follows:

"'Be it enacted by the city council of the city of Denver,
that said section 46, of ordinance No. 23, of the Ordinances
of the City of Denver, of the series of 1885, be amended so
as to read as follows:

"'Section 46. No candle factory, rendering establishment,
soap factory, livery stable, or stable for the boarding of horses,
shall be erected, established, or carried on in any block in
this city (unless the same shall be in operation at the date of
the passage of this article) without a permit from the city

council. The city council shall not grant a permit for the erection or carrying on of either or any of the above mentioned establishments or vocations in any block in the city of Denver, when a majority of the owners of the lots composing any such block shall protest, in writing, against the erection, establishment or carrying on of the same therein.

" ' No permits shall be issued by the city council for any candle factory, rendering establishment, or soap factory to be erected, carried on or conducted within 500 feet of any school building in the city of Denver, nor for any livery stable in any block in which a school building is situated, or in any block which is opposite to a block in which a school building is situated.'

" It is agreed that the penalty of this amended ordinance is as follows : section 6, article 9, of chapter X, of the Laws and Ordinances of the City of Denver, Colorado, 1886, provides :

" ' That any person or persons guilty of a violation of any of the foregoing provisions of this chapter, where a penalty is not fixed for such violation, shall, upon conviction, be fined for each and every offense in a sum not less than $10 nor more than $100.'

" That upon the trial of said case in said police court, the only testimony that was offered on the part of the city was that said livery stable was carried on within 500 feet of a school building, and that the said block in which the said livery stable was conducted was opposite to a block in which a school building was situated ; that judgment was rendered against said defendant, from which defendant prayed an appeal to the county court.

" It is conceded that said defendant occupied and conducted a livery stable within the limits prohibited by the ordinance, which was erected and put in operation after the 18th day of February, 1888, and that at the time of and prior to the commencement of this action, the defendant was engaged in running a livery stable, or stable for the boarding of horses. There being no dispute as to the facts, the only question pre-

sented to the court for consideration is, whether the ordinance or regulations regularly adopted and enacted by the city council of the city of Denver is valid."

Mr. CHARLES M. CAMPBELL, for plaintiff in error.

Mr. JOHN F. SHAFROTH, Mr. A. B. SEAMAN and Mr. G. W. WHITFORD, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error challenge the validity of the ordinance under which defendant was convicted.

Among other things, the ordinance provides that no livery stable, or stable for the boarding of horses, shall be erected, established or carried on in any block in this city (unless the same shall be in operation at the date of the passage of the ordinance) without a permit from the city council; and that no permit shall be issued for any livery stable *in any block in which a school building is situated, or in any block opposite to a block in which a school building is situated.*

It is conceded that defendant occupied, conducted, and was engaged in running a livery stable for the boarding of horses within the limits prohibited by the ordinance at the time of, and prior to, the commencement of this action; and that the stable was erected and put in operation after the adoption of the ordinance, February 18, 1888.

1. In the case of *The City of Durango v. Reinsberg,* 16 Colo. 327, this court declared the law as follows in respect to the powers of municipal corporations:

" A municipal corporation can exercise only such powers as are granted to it by its charter or by the general law of the state, either in express words or by necessary or reasonable implication, or such as are incidental to the powers expressly granted, or such as are essential to the objects and purposes of the corporation. A municipal corporation, under a general grant of authority, cannot adopt ordinances which

infringe the spirit or are repugnant to the policy of the state as declared in its legislation."

2. In determining whether a municipal ordinance is valid, the following distinction is to be observed: An ordinance expressly authorized by specific and definite legislative authority will be upheld unless it conflicts with the constitution of the state or nation, while an ordinance which the municipality assumes to pass by virtue of its incidental powers, or under a general grant of authority, will be declared invalid, unless it be reasonable, fair, and impartial, and not arbitrary or oppressive. 1 Dillon Mun. Corp. (4th ed.) §§ 319–322; also, § 327 *et seq.*; *Tugman v. City of Chicago*, 78 Ills. 405; *May v. The People*, 1 Colo. App. 157.

The following provisions of the charter of the city of Denver were in force at the time of the adoption of the ordinance in question, and they are now relied on to sustain its validity:

" Sec. 20. The city council shall have power by ordinance :

" *Eleventh.* Exclusively to license, regulate, and tax any or all lawful occupations, business places, amusements, places of amusement, and may fix the rate of charges for the carriage of persons and property within the city, by licensed hackmen, omnibus-men, carriage-men, dray-men, and express-men.

" *Fifty-eighth.* To regulate or prevent the carrying on of any business which may be dangerous or detrimental to public health, or the manufacture or vending of articles obnoxious to the health of the inhabitants ; and to declare, prevent or abate nuisances on public or private property and the cause thereof." See Session Laws, 1885, pp. 81, 82 and 87.

· The following provision of the charter was passed after the adoption of the ordinance in question : ·

" The city council shall have the power to make all ordinances which shall be necessary and proper for carrying into execution the powers specified in this act, and to make all ordinances which it may deem necessary or requisite for the good order, health, good government and general welfare of the city. See Session Laws 1889, p. 129, amendment to sec. 21 of the charter of 1885.

By virtue of the foregoing provisions it is contended that

the city council were authorized to control absolutely the location and carrying on of livery stables within the limits of the city; that by virtue of the power to *regulate and prevent*, they might prescribe the limits for such stables, at their discretion, and prohibit their being conducted elsewhere; and that they might declare and abate livery stables as nuisances, if carried on within such interdicted limits, or visit upon the proprietors such penalties as would compel them to yield obedience to any ordinance the council might deem proper to enact upon such subject.

In our opinion, the charter provisions, above quoted, will not bear the construction contended for. The power conferred is not sufficiently specific or definite to warrant such unrestrained municipal legislation affecting private property. The grant of power to *regulate lawful occupations and business places* is certainly not an express grant of power to *locate* or prescribe the limits of carrying on lawful occupations upon private premises. The grant of power to *regulate and prevent the carrying on of business dangerous or detrimental to public health, and to declare, prevent, or abate nuisances*, is not to be construed as vesting the city council with authority to prohibit, at their discretion, the existence of *well constructed, well regulated* and *well conducted* livery stables; neither does the "general welfare" clause, adopted after the passage of the ordinance in question, confer full and specific power upon the city council for that purpose. The ordinance in question must, therefore, be subjected to the test of reasonableness; and the particular provision under consideration cannot stand, in any event, unless its adoption was a reasonable exercise of the incidental or general grants of power contained in the charter. Whether the city government can be vested with such authority as is contended for, need not now be considered. *Everett v. City of Council Bluffs*, 46 Iowa, 66.

3. A livery stable in a town or city is not, *per se*, a nuisance, though it may become a nuisance, if not constructed, kept and used in a proper manner. *Flint v. Russell*, 5 Dillon C. C. Rep. 151; *Kirkwan v. Handy*, 30 Tenn. 406.

The ordinance in question is not directed against livery stables improperly kept or used, but against all livery stables within the prescribed limits. There is nothing to indicate that there was anything improper in the construction, keeping, or use of defendant's stable. The sole contention on the part of the city, therefore, is confined to the single fact, that defendant had located and conducted his stable within the limits prohibited by the ordinance—that is, in a block opposite to a block in which a school building was situated. The ordinance, however, does not undertake to declare that a livery stable conducted within the interdicted limits shall be deemed a nuisance, *per se ;* nor do we intimate that such an ordinance would have been valid if passed. *City of Denver v. Mullen,* 7 Colo. 345; *State v. Mott,* 61 Md. 297.

4. It is true, there was testimony showing that defendant occupied and carried on a livery stable within 500 feet of a school building, and, also, that said livery stable was in a block opposite to a block in which a school building was situated. But the ordinance does not provide that livery stables shall not be located or conducted within 500 feet of any school building, nor is any other distance prescribed. The 500 feet limit applies only to *candle factories, rendering establishments and soap factories.* In respect to livery stables, the language is, "that no permit shall be issued * * * for any livery stable in any block in which a school building is situated, or in any block which is opposite to a block in which a school building is situated."

The record in this cause does not show the size or dimensions of blocks in the city of Denver, nor does it show that the blocks are of uniform dimensions. There is, therefore, no definite distance from school buildings within which the construction and carrying on of livery stables are prohibited by the ordinance.

For illustration : Suppose the city is laid out into blocks of uniform dimensions intersected by streets and alleys at right angles. In such case, if a school building were located on an interior block, livery stables would, by the ordinance,

be excluded from five blocks; and if the blocks were 400 feet in length by 266 feet in width, and the streets 80 feet wide, a school building might be so situated as to exclude the location of a livery stable nearly a thousand feet distant from it,—that is, the diagonal *length* of two blocks and the *width* of the intervening street. On the other hand, a stable might be located only a little more than 100 feet from a school building—that is, on the corner diagonally across from it, and yet not be in the same block, nor in any block directly opposite thereto; more than this, the stable located at the greater distance would face from, and be out of sight of, the school building, while the nearer stable would be in full view of it; and yet the location of the farther stable would be contrary to the ordinance, while the nearer stable would not be. If it be considered that the ordinance applies to blocks diagonally opposite to a school building its operation is, in some respects, still more objectionable; for, in such case, livery stables would be excluded from nine blocks for every school building situated in the interior of the city.

Even the foregoing illustration does not fully show the unreasonableness of the ordinance in question. There is nothing in the record to show that the blocks of the city are of uniform size; some may be larger than above supposed, and some may be twice or three times as large—as in case where the usual intersecting street or streets have not been cut through. An ordinance so uncertain, so indefinite, so unsuitable and unsatisfactory to accomplish the desired object, cannot be regarded as *reasonable;* and so cannot be upheld under the authority supposed to be granted by the city charter.

Ordinances of the kind in question, though not strictly criminal, are highly penal, and cannot, unless free from legal and constitutitional objection, be permitted to prejudice the rights and privileges of the citizen in respect to the use and enjoyment of his private property.

The judgment of the county court is reversed and the cause remanded.

*Reversed.*