[No. 5848.]

CITY AND COUNTY OF DENVER V. ROGERS.

**Nuisance—Power . of Municipality to Declare—A** charter power "to regulate and prevent the carrying on of any business which may be dangerous or detrimental to the public health; * * * and to declare, prevent, and abate nuisances, on public or private property, and the cost thereof," and "to enact and provide for the enforcement of all ordinances necessary to protect life, health and property, to declare, prevent and summarily abate and remove nuisances," does not authorize a municipality to arbitrarily declare by ordinance that "a brick yard where bricks are burned, within 1200 feet of any residence, or public school house, or park belonging to the city, without permission of the owner or occupant of such residence, or of the city, when within 1200 feet of a school house or public park, is a nuisance, and impose upon the owner a fine for each day's continuance thereof." —(480)

The ordinance is void because unreasonable, and because a taking or destruction of private property without due process of law.—(486)

*Appeal from Denver County Court*—Hon. BEN B. LINDSEY, Judge.

Mr. H. A. LINDSLEY, Mr. F. W. SANBORN, and Mr. J. FRANK ADAMS, for appellant.

Mr. Fred Williams, and Mr. R. D. Rees, for appellee.

Mr. Justice Bailey delivered the opinion of the court:

This case involves the validity of sec. 936 of art. III, chapter 10, of ordinance No. 101, series 1898 of the laws and ordinances of the city and county of Denver, approved October 24th of that year, which reads as follows:

"Section 936. A brick yard, where bricks are burned within twelve hundred feet of any residence or public school house or park belonging to the city, within the limits of the city of Denver, without permission from the owner or owners of such residence or residences, or the occupants thereof, or without permission from the city, when such brick yard is within twelve hundred feet of a public school house or city park, is hereby defined and declared to be a nuisance, and every person who shall keep a brick yard, where bricks are burned, whether he is the owner, agent, lessee or occupant of such land or premises, where such brick yard is established or kept, so as to be a nuisance, within the meaning of this section, shall be deemed the author of such nuisance, and upon conviction thereof shall be fined in a sum not less than fifty dollars nor more than five hundred dollars. Each day's continuance of the nuisance shall be punished as a separate offense."

Prosecution was had in the police magistrate's court of the city and county of Denver, against the appellee on complaint for a violation of the above ordinance, and conviction followed. On appeal therefrom to the county court appellee demurred to the information upon the following, among other, grounds:

1. Want of corporate power to enact the ordinance in question.

2. That the corporate power conferred by the city charter is subject to the limitations of the federal and state constitutions, and that the ordinance in question violates constitutional rights.

3. That the ordinance in question is not a valid exercise of the police power.

4. That the ordinance in question is unreasonable, unconstitutional and void.

The court below sustained the demurrer and dismissed the complaint. From the ruling on the demurrer and the judgment of dismissal the city prosecutes this appeal.

The following provisions of the charter of the city and county of Denver were in force at the time of the adoption of the ordinance in question, and they are now relied on to support and sustain its validity. A portion of sec. 58 thereof vests the city council with power,

"To regulate or prevent the carrying on of any business which may be dangerous or detrimental to public health, or the manufacture or vending of articles obnoxious to the health of the inhabitants; and to declare, prevent or abate nuisances on public or private property and the cause thereof."

In sec. 17 it is said, among other things, that,

"The council shall have power to enact and provide for the enforcement of all ordinances necessary to protect life, health and property, to declare, prevent and summarily abate and remove nuisances; to preserve and enforce the good government, general welfare, order and security of the city and county and the inhabitants thereof."

By virtue of the foregoing provisions it is contended that the city council is authorized to control absolutely the location, and to regulate the method

of conducting brick yards, within the limits of the city, and to arbitrarily declare, without ascertainment of any kind, judicial or otherwise, that to be a public nuisance, always and under all conditions, when operated within certain prescribed limits, which, it may be admitted, may sometimes and under some circumstances and conditions be a nuisance, either public or private, but which in no sense is a natural nuisance, or nuisance *per se*. These provisions are not susceptible of such construction. To so determine would be equivalent to declaring the legislative or municipal fiat absolute and supreme, even though out of harmony and in clear conflict with the provisions of both national and state constitutions. Such holding would place it within the power of the municipal legislature to strike down and annihilate any business, however harmless and inoffensive in fact, which, for any reason, it might desire to put under the ban. The effect would be to say that no matter how extreme, unreasonable or invidious the law passed upon a given subject might be, still, under the powers granted, the action of the council is final and the door to judicial inquiry and examination securely closed. The question is, whether a business which is not a nuisance *per se*, can, without judicial inquiry, without a day in court, without the application of legal or equitable principles to the circumstances and conditions as they actually exist, or without decision of judge or jury, when the facts are disputed, be declared and finally determined by the municipal legislature to be a nuisance? Counsel for the city contend for the arbitrary rule which precludes inquiry in any case, and to the effect that whether certain occupations, not nuisances *per se,* but which owing to local conditions may sometimes be in their operation detrimental to the public, should be declared nuisances, is purely a political and not a

judicial question, and one exclusively for the municipal legislative body, and not for court or jury under any circumstances.

We are not without authority in our own state upon this precise question. In the case of *The City of Denver v. Mullen*, 7 Colo. 355, this court, passing on an ordinance similar to the one under consideration, and enacted under the authority of substantially the same general charter provisions as those now before us, with reference to the authority of the city council to arbitrarily declare what constitutes a nuisance, spoke as follows:

"The proper construction of this language is, that the city is clothed with authority to declare, by general ordinance, what shall constitute a nuisance. That is to say, the city may, by such ordinance, define, classify and enact what things or classes of things, and under what conditions and circumstances, such specified things are to constitute and be deemed nuisances. For instance, the city might, under such authority, declare by ordinance that slaughter houses within the limits of the city, carcasses of dead animals left lying within the city, goods, boxes, and the like, piled up or remaining for a certain length of time on the sidewalks, or other things injurious to health, or causing obstruction or danger to the public in the use of the streets and sidewalks, should be deemed nuisances; not that the city council may, by a mere resolution or motion, declare any particular thing a nuisance which has not theretofore been pronounced to be such by law, or so adjudged by judicial determination.   *   *   *

"It is only certain kinds of nuisances that may be removed or abated summarily by the acts of individuals or by the public, such as those which affect the health, or interfere with the safety of property or person, or are tangible obstructions to streets and

highways under circumstances presenting an emergency; such clear cases of nuisance *per se,* are well understood, and need not be further noticed here, to distinguish them from the case before us."

In the case of *Phillips v. City of Denver,* 19 Colo. at page 184, this court, speaking through Mr. Justice Elliott, upon this precise question, said:

"In our opinion, the charter provisions, above quoted, will not bear the construction contended for. The power conferred is not sufficiently specific or definite to warrant such unrestrained municipal legislation affecting . private property. The grant of power to regulate lawful occupations and business places is certainly not an express grant of power to locate or prescribe the limits of carrying on lawful occupations upon private premises. The grant of power to regulate and prevent the carrying on of business dangerous or detrimental to public health, and to declare, prevent, or abate nuisances, is not to be construed as vesting the city council with authority to prohibit, at their discretion, the existence of well constructed, well regulated and well conducted livery stables; neither does the 'general welfare' clause, adopted after the passage of the ordinance in question, confer full and specific power upon the city council for that purpose."

In treating upon the power of municipal authorities relating to nuisances, Mr. Wood, in his work on the Law of Nuisances, says in substance and effect, in respect to such things as are not nuisances *per se,* that they must be lawfully ascertained to be such. That the municipal authorities cannot arbitrarily declare a thing a nuisance, or destroy valuable property which was lawfully erected or created without such lawful ascertainment; even if power therefor has been expressly conferred upon the legislature, it is inoperative and void unless the thing is in fact a

nuisance, or was created or erected after the passage of the ordinance, and in defiance of it; and except in cases of emergency, or when the use is clearly a nuisance, the fact should be first established by judicial inquiry.    (See sec. 740.)

This court, in the case of *Denver v. Mullen, supra,* quotes with approval from the opinion of the supreme court of the United States, in the case of *Yates v. City of Milwaukee,* 10 Wallace 497, the following:

"The mere declaration by the city council of Milwaukee, that a certain structure was an encroachment or obstruction, did not make it so, nor could such declaration make it a nuisance unless it in fact had that character.   It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the state, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself.   This would place every house, every business, and all the property of the city, at the uncontrolled will of the temporary local authorities."

The same doctrine is announced in *C., R. I. & P. R. R. Co. v. Joliet,* 79 Ill. 25, also in *Everett v. Council Bluffs,* 48 Iowa 66, and in numerous other authorities.

It will thus be seen that the contention of the city upon this proposition is contrary to authority, as laid down in the adjudged cases in our own and other courts of final resort, and is in our opinion wrong in principle, a highly dangerous doctrine, and not to be tolerated or judicially sanctioned.

The general grant of authority to the city not being, as we have shown, sufficiently specific and definite to warrant such broad and unrestricted legis-

lation as is contained in this ordinance, its reasonableness, as well as the question of its constitutionality, become proper matters for consideration. When subjected to the test of reasonableness this ordinance is so manifestly radical, unjust and oppressive, while upon the question of its constitutionality, its effect is so clearly to take and destroy property without due process of law, that we have no hesitancy in declaring it invalid on both grounds.

It is difficult to conceive how a more drastic, radical and extreme municipal law, than the one under consideration, could be proposed. Under its provisions one of the most important, useful and necessary industries known to business life, everywhere recognized as lawful and legitimate, confessedly not a nuisance at common law or inherently, in which thousands of dollars are invested and employed, is arbitrarily driven beyond the city limits and thus largely destroyed, by the mere edict of the city council, upon the occurrence of these two things, first, that such business is either within twelve hundred feet of a single residence house, or of a city park or public school house, and second, in case of the residence that its owner or occupant, and in the case of the park or school that the city, has not consented to such location. To accomplish such result it matters not whether such business is in truth detrimental or obnoxious, or whether it is being conducted in a proper, legitimate and innocent way. The mere statement of the facts upon, and the conditions under which, this ordinance is in effect, as above indicated, is in itself alone a complete refutation of the claim that it is a proper and reasonable one, or a valid exercise by the city, of its police power. The judgment below in holding the law void is right, and should be affirmed. It is so ordered. *Affirmed.*

Decision *en banc.* All the justices concur.