[No. 5606.]

## THE CURRAN BILL POSTING AND DISTRIBUTING COMPANY v. THE CITY OF DENVER.

1. **Denver—Powers Under Charter of 1893—Under the char-ter of 1893 (Laws 1893, 131), the city of Denver had power to exact a license fee from those engaged in bill posting within the corporate limits.—(224)**

2. **Municipal Ordinances—Unreasonable—A municipal ordi-nance authorized by specific and definite legislative enactment, and not conflicting with any constitutional provision, will be sustained; but an ordinance which a municipality assumes to pass under a general grant of authority, or under incidental powers, must be reasonable, fair and impartial, and not arbi-trary or oppressive.—(229)**

An ordinance prohibiting the erection of a bill board "for advertising purposes, * * * any portion of which is within ten feet of any street, avenue or alley line, or which is more than twenty-five feet in length or more than eight feet in height, or within ten feet of any building or structure," making no re-striction as to whether the board is of combustible material, or safe, or sanitary or otherwise, or any prohibition whatever when the structure is not used for advertising purposes, is an unwar-ranted invasion of private right, though the city had unques-tioned power, to prohibit the erection of insecure structures, to require the owners to maintain them in secure and sanitary con-dition, to provide for their removal at the expense of the owner if unsafe or unsanitary, and to prohibit indecent advertisements or those of immoral tendency, limited by what is reasonable, necessary to prevent the spread of fire, compel the use of incom-bustible material in such structures, and restrict their size.—(230)

3. **Municipal Corporations—Delegation of Power—A munic-ipality cannot commit the exercise of its legislative discretion to private persons, nor to the caprice of its officers, nor reserve to itself, in its administrative capacity, an absolute or despotic power to grant or refuse, in particular cases, without reference to any general and duly enacted regulation, a permit to carry on a lawful business.—(235, 236)**

*Appeal from Denver County Court*—Hon. ROB-ERT W. STEELE, Judge.

Mr. W. H. ANDREW, Messrs. TALBOT, DENISON & WADLEY, and Mr. E. ALLEN FROST, for appellant.

Mr. H. M. ORAHOOD, Mr. H. L. RITTER, Mr. M. B. BACHTELL, Mr. HENRY A. LINDSLEY, Mr. THOMAS R. WOODROW, and Mr. GEORGE Q. RICHMOND, for appellees.

Mr. JUSTICE WHITE delivered the opinion of the court:

The appellant was adjudged to pay a fine for the violation of the provisions of an ordinance of the city of Denver, and appealed the case to the court of appeals. Upon the abolishment of that court the appeal was lodged in this, by virtue of the constitutional. amendment. The argument for reversal of the judgment is based upon the alleged invalidity of the ordinance under which the forfeiture was imposed.

The particular sections of the ordinance necessary to consider in this inquiry are as follows:

"Sec. 589. No person or persons, firm or corporation, shall within the corporate limits of the city of Denver, directly or indirectly, in person or by another, either as principal, agent, clerk or servant, erect or maintain, or cause to be erected or maintained, any bill board or other structure designed to be used for advertising purposes, whereon any poster, bill, painting, or other advertising matter whatsoever may be placed, stuck, tacked, printed, posted, fastened or placed without a permit so to do from the fire and police board of the city of Denver.

"Sec. 592. No person or persons, firm or corporation, shall directly or indirectly, in person or by another, either as principal, agent, clerk or servant, erect or maintain, or cause to be erected or maintained, any bill board or other structure as mentioned in section 589, any portion of which is within ten feet of any street, avenue or alley line, nor more than twenty-five feet in length, nor more than eight

feet in height in any part above or on the established grade of the sidewalk abutting the land on which such bill board or structure is erected; nor shall any part or portion of the same be within ten feet of any building or structure.

"Sec. 594.   The fire and police board of the city of Denver may in its discretion revoke or decline to renew any license issued by it as provided in section 589, and no such license shall be issued for a greater period than one year.   No application for a license to erect a bill board or other structure designed to be used for advertising purposes shall be considered by the fire and police board until the written consent of the adjoining lot owners and residents directly opposite to such proposed bill board, if any there be, shall be exhibited to the fire and police board, together with such application."

It was agreed that the ordinance was passed, and went into effect October 24, 1898, and that appellant possessed a license thereunder to do business; that a bill board, within the city limits, erected since the passage of the ordinance, was owned and maintained by appellant, within ten feet of the street line, and more than twenty-five feet in length, and more than eight feet in height.   The evidence showed that the height of standard theatrical and commercial paper used for advertising purposes is uniform over the United States, and requires a bill board for advertising purposes not less than nine feet six inches in height and from twenty to thirty-five feet in length; that it could not be placed upon a board only eight feet in height without destroying the advertisement, and, therefore, by reason of the limitations of the ordinance, defendant was deprived of that class of business.

At the time of, and prior to the trial, the city of Denver was exercising its municipal functions under

an act of the general assembly of 1893, generally known as The Denver City Charter, and its authority and powers are found in. derived from, and measured by, that act.

Under the charter certain specific powers are granted to the city, among which are the following: in art. 2, § 20: "(4), To provide for the inspection and regulation of buildings and parts of buildings, etc.: (10), Exclusively to provide for the licensing, regulating and taxing of all lawful occupations, and business places, etc.: (32), To establish fire limits and such general regulations by ordinance for the prevention and extinguishment of fires as the city council may deem expedient: (58), To secure the general health of the inhabitants by any means necessary: to regulate or prevent the carrying on of any business which may be dangerous or detrimental to public health, and to declare, prevent or abate nuisances on public or private property and the cause thereof." And in § 22 of said article, "To enact all ordinances necessary and proper for carrying into execution the powers specified in this act, and which it may deem necessary or requisite for the good order, health, good government and general welfare of the city."

Under these provisions it is clearly evident that full power is lodged in the city to exact a license fee of those engaged in the business of bill posting, and to regulate the construction and use of bill boards within the corporate limits of the municipality, provided the license fee exacted, and the regulations imposed, be "reasonable, fair, and impartial, and not arbitrary or oppressive."—*Phillips v. City of Denver*, 19 Colo. 179, 183. The natural right, one may have, to use his own property as he wills, is subject always to the limitation that in its use, others shall not be injured. That which is hurtful to the comfort,

safety and welfare of society may always be prohibited, under the inherent or plenary power of the state, notwithstanding the incidental inconvenience or loss individuals may suffer thereby. This power is the law of necessity, and is founded upon the maxim *salus populi suprema lex.* The exercise of the power is essential to the maintenance of society; and the establishment of government itself, presupposes the surrender to it, by the individual citizen, the right to regulate, and even forbid, such use of his private property as would prove injurious to the citizens generally.—*City of Chicago v. Rogers Park Water Co.,* 214 Ill. 212; *Mugler v. Kansas,* 123 U. S. 623, 665.

It is equally true, however, that the owner of property has the right to put it to any use he desires, provided in so doing, he does not imperil or threaten harm to others. Legislative restrictions of the use of property are imposed only upon the theory of necessity; that is, they are necessary for the safety, health, comfort or general welfare of the public.

As said in *Mugler v. Kansas, supra:*

"It does not at all follow that every statute enacted ostensibly for the promotion of these ends, (the protection of public morals, the public health, or the public safety,) is to be accepted as a legitimate exercise of the police powers of the State. There are, of necessity, limits beyond which legislation cannot rightfully go. While every possible presumption is to be indulged in favor of the validity of a statute, *Sinking Fund Cases,* 99 U. S. 700, 718, the courts must obey the Constitution rather than the law-making department of government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. 'To what purpose,' it was said in *Marbury v. Madison,* 1 Cranch 137, 176, 'are powers limited, and to what

(15)

purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation.' The courts are not bound by mere forms, nor are they to be misled by mere pretences. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.''

In *State v. Whitlock,* 149 N. C. 542, the rule stated, applicable to the case under consideration, is that: ''Unless the ordinance in question is an unreasonable and unnecessary restriction of the right of the landowner to erect structures upon his land, it must be sustained as a proper exercise of the police power of the state. Aesthetic considerations will not warrant its adoption, but those only which have for their object the safety and welfare of the community.''

In *Varney v. Williams,* 100 Pac. (Cal.) 867, 868, the supreme court declares: ''That the promotion of aesthetic or artistic considerations is a proper object of governmental care will probably not be disputed. But, so far as we are advised, it has never been held that these considerations alone will justify, as an exercise of the police power, a radical restriction of the right of an owner of property to use his

property in an ordinary and beneficial way. Such restriction is, if not a taking, *pro tanto* of the prop- erty, a damaging thereof, for which  *  *  *  the owner is entitled to compensation.''

In the *City of Passaic v. Paterson Bill Posting Co.,* 62 Atl. 267, 268, the court attributes the adoption of an ordinance to aesthetic considerations rather than to an exclusive regard for the public safety, and in holding it invalid, says:   ''No case has been cited, nor are we aware of any case which holds that a man may be deprived of his property because his tastes are not those of his neighbors.   Aesthetic considera- tions are a matter of luxury and indulgence rather than necessity, and it is necessity alone which justi- fies the exercise of the police power to take private property without compensation.''

The cut of the dress, the color of the garment worn, the style of the hat, the architecture of the building or its color, may be distasteful to the refined senses of some, yet government can neither control nor regulate in such affairs.   The doctrines of the Commune invest such authority in the state, but ours is a constitutional government based upon the indi- viduality and intelligence of the citizen, and does not seek, nor has it the power, to control him, except in those matters where the rights of others are injuri- ously affected or imperiled.   ''The toleration of such power on the part of the government would be con- ceding to it the right of controlling every man, and directing what road he shall travel in the 'pursuit of happiness.'   Thus the freedom of the citizen would be lost in the despotic will of the government, and, under the semblance of liberty, we should have the essence of tyranny.''

Bearing in mind these well established princi- ples and directing our attention to the ordinance in

question, it is clearly evident that it is so unreasonable as to be invalid.

Under its provisions any part or portion of a bill board, or other structure designed to be used for advertising purposes shall not "be within ten feet of any building or structure," or street or alley line. Wherein is the reasonableness or necessity for such restrictions to protect the public health, the public morals, or the public safety? The restrictions are not limited to structures made of wood or combustible material. Moreover, it will be observed that structures of whatsoever material, strength, height, or length, erected on the street line, do not come within the prohibition of the ordinance, if they be not designed or used for advertising purposes. The restrictions imposed are not against the material, the height, the length, nor the location of the structure, but solely as means of advertisement. It prohibits such structures without regard to their being safe or sanitary. Though they be perfectly safe, thoroughly sanitary, not made of inflammable material, nor a menace to the public, nor to individuals, they are nevertheless, under this ordinance, prohibited, and for the sole reason that they are structures designed to be used for advertising purposes. In what way can the erection of safe structures, of proper material, within certain limits, for advertising purposes, endanger the public health or safety any more than like structures erected and used for other lawful purposes? If the owner has the right to erect upon the lot line buildings or other structures of proper material, in a substantial manner, as he undoubtedly has, it is certainly an unwarranted invasion of his rights to prohibit the erection or use of such structures for proper advertising purposes.

Counsel, however, argue that the city has the right to make such rules and regulations as it shall

deem necessary for the protection of the public, and that the reasonableness of such enactments will not be questioned by the courts unless they are prohibitive.

The rule is that, "An ordinance expressly authorized by specific and definite legislative authority will be upheld unless it conflicts with the constitution of the state or nation; but an ordinance which the municipality assumes to pass by virtue of its incidental powers, or under a general grant of authority, will be declared invalid, unless it be reasonable, fair and impartial, and not arbitrary or oppressive."— *Phillips v. Denver, supra.*

The power conferred by the charter provisions hereinbefore quoted is not so specific or definite as to preclude the court testing by the rule of reasonableness, municipal legislation enacted thereunder.— *Denver v. Rogers,* 46 Colo. 479, 104 Pac. 1042. The city at the time of the enactment of the ordinance, and the trial of this case, was, as hereinbefore stated, acting under a special charter granted by the legislature, and not under a charter by constitutional amendment as now. Therefore, as said in the *Phillips case, supra,* "Whether the city government can be vested with such authority as is contended for, need not now be considered."

At the trial in the county court, counsel for the city apparently, assumed, and presented the case without controversy or question, upon the theory that bill boards, and structures designed to be used for advertising purposes, are always unsubstantial in construction, and invariably made of wood. It was upon this theory, so erroneously assumed by counsel, and wholly unsupported by evidence, that the learned trial judge based his conclusions and sustained the ordinance. If the restrictions were really so limited

in application, the ordinance would probably not be objectionable.

The city by virtue of the grant of power in its charter has the unquestioned right to prescribe the manner of construction, and to compel the use of incombustible material in the erection, of signs and bill boards within certain limits reasonably· necessary to prevent the spread of fire, and within like limits to restrict their size; to prohibit the erection of insecure bill boards or other structures; to require the owners to maintain them in a secure and sanitary condition; to provide for their removal at the expense of the owners in case they become dangerous or unsanitary, and to prohibit advertisements thereon of indecent or immoral tendencies. It may also have the power to reasonably limit the length, the height and location of bill boards or structures made of such materials, and erected in such manner as may likely be dangerous to the public by falling or being blown down.—*City of Chicago v. Gunning System,* 214 Ill. 628, 629.

But the prohibition of the erection of structures designed for advertising purposes within ten feet of other structures, or upon the lot line, however safe, sanitary and morally unobjectionable they may be, is an unwarranted invasion of private rights and cannot be tolerated. The necessities of the public do not require so drastic restrictions, and it is those necessities alone that test the reasonableness of such enactments.

In *Crawford v. City of Topeka,* 51 Kas. 756, 762, it is said: "It is doubtless within the power of the city to prohibit the erection of insecure bill boards or other structures, require the owners to maintain them in a secure condition, and to provide for their removal at the expense of the owners in case they become dangerous. Perhaps regulations may be

made with reference to the manner of construction so as to insure safety, but the prohibition of the erection of structures upon the lot line, however safe they might be, would be an unwarranted invasion of private right, and is without legislative authority.''

The same rule is announced in *State v. Whitlock, supra,* where it is said: ''It is fundamental law that the owner of land has the right to erect such structures upon it as he may see fit, and put his property to any use which may suit his pleasure, provided that in so doing he does not imperil or threaten harm to others. * * * But the prohibition of structures upon the lot line, however safe they may be, is an unwarranted invasion of private right, and is so held to be by all the courts which have passed upon the question, as we are now advised.''

In *Bryan v. Chester,* 212 Pa. 259, the court, in holding the ordinance there under consideration invalid, said: ''Perhaps regulations may be made with reference to the manner of construction so as to insure safety, but the prohibition of the erection of structures upon the lot line, however safe they might be, would be an unwarranted invasion of private right.'' The same rule is announced in *Commonwealth v. Boston Ad. Co.,* 188 Mass. 348; *Bill Posting Sign Co. v. Atlantic City,* 71 N. J. L. 72.

In *City of Passaic v. Paterson Bill Posting Co., supra,* in answer to the argument that because the erection of such signs might be attended with danger to the public in times of severe storms, or by the decay of their supports, the ordinance was not without legal authority, it was said: ''In our opinion the legality of the ordinance does not depend upon the possibility of danger thus suggested, but upon whether such a regulation is reasonably necessary for the public safety. There must always be a possibility of danger from the erection of any structure,

and from its decay; but such a possibility is not sufficient to justify the municipal authorities in depriving a man of the ordinary use of his land. In all our cities and towns, fences and buildings are erected upon the street line, involving the same or even greater possibility of danger from severe storms or natural decay, but it would hardly be maintained that a municipality could be authorized by the legislature to compel the owners of buildings already erected to take them down or remove them ten feet back from the street line. Yet the danger to the public from bricks and slates, ice and snow, falling from a building is much greater than any possible danger from a bill board."

Analogous in principle is the case of *St. Louis. v. Hill,* 116 Mo. 527, in which the court held invalid an enactment authorizing cities to establish along boulevards a building-line to which all structures must conform.

The bill board cases cited by counsel for the city are not pertinent to the questions involved in this case. The doctrine they announce is distinguishable from the principles applicable to the case at bar, as we shall now endeavor to show. *The City of Rochester v. West,* 164 N. Y. 510, involved an ordinance which provided that no bill board above the height of six feet should be erected without a *permit from the common council.* The charter expressly authorized the city "to license and regulate bill-posters and bill distributors and sign advertising." It was under this express grant of power that the ordinance was enacted. The ordinance, therefore, could probably be upheld under the doctrine announced in *Phillips v. Denver, supra.* But the more logical basis for the decision is, that the Rochester ordinance did not attempt to prohibit structures exceeding a designated height. It declared that bill

boards over six feet in height should not be erected without a *permit from the common council*. It did not take away from that body authority to permit the erection of bill boards in excess of the designated height. From all that appears in the case, such reserved authority could be, and probably was, exercised under proper rules and regulations. The cases of *Gunning System v. Buffalo*, 75 N. Y. App. Div. 31, and *Whitmier v. Buffalo*, 118 Fed. 773, involved an ordinance substantially the same as the ordinance in the *Rochester v. West case*. The ordinance did not limit the erection of bill boards to a height of seven feet, but prohibited the erection of such structures to a height of more than seven feet *without a permit* from the common council. If the Rochester and Buffalo ordinances had absolutely limited bill boards and structures designed for advertising purposes to the heights designated, and had likewise prohibited any portion of such structures to be within ten feet of any street, avenue or alley line, or within ten feet of any other building or structure, it is very apparent from other decisions of the courts of New York state that they would not have been upheld.

In *People v. Green*, 83 N. Y. Supp. 460, 464, in speaking of the case of *Rochester v. West, supra,* it is said: "All that was held in that case was that the Legislature had power to confer upon the municipal corporation authority to regulate boards erected for the purpose of bill posting, so far as such legislation was necessary to the safety or welfare of the inhabitants of the city or persons passing along the streets."

*People ex rel. v. Murphy* involved an ordinance restricting the height of sky signs for advertising purposes to nine feet, and was upheld by the supreme court of New York, Spec. Term, 60 Misc. Rep. 536. The case was then considered by the appellate divi-

sion of the supreme court—113 N. Y. Supp. 855—
where the special term decision was reversed and the
ordinance held void.   The opinion considers and ex-
plains, the cases of *Rochester v. West, supra; Gun-
ning System v. Buffalo, supra,* and *Whitmier v.
Buffalo, supra,* in the following language: "In the
Rochester case the ordinance was not prohibitive of
bill boards more than six feet in height.   It permitted
them, up to that height, to be erected without any
permit at all, but provided that bill boards exceeding
that height might not be erected 'without the permis-
sion of the common council,' and the ordinance pre-
scribed the procedure to be followed in applying for
such permission.   The complaint against the defend-
ant in that case was not that he erected a bill board
more than six feet high, but that he did so without
having applied for, and obtained the consent of the
common council.   In the two cases arising in the
city of Buffalo, the ordinance did not prohibit the
erection of bill boards over seven feet high, but pre-
scribed that over that height they could only be
erected with the permission of the common council.
See report of the case in *Gunning System v. City of
Buffalo,* 62 App. Div. 155, where the ordinance is set
forth in full." The *People ex rel. v. Murphy, supra,*
was carried to the court of appeals, 195 N. Y. 126,
the highest judicial tribunal of that state, where the
decision of the appellate division of the supreme
court, declaring the ordinance invalid, was upheld.
The opinion, which appears to be the latest expres-
sion of the courts of that state on the subject, distin-
guishes and explains the *Rochester-West case,* cites
and quotes with approval, *Commonwealth v. Boston
Ad. Co., supra; Bryan v. City of Chester, supra;
Crawford v. City of Topeka, supra; The City of
Passaic v. Paterson Bill Posting Co., supra,* and

other authorities analogous in principle, and announces the doctrine we have adopted in this case.

The only other case cited, upon this point, which we deem necessary to notice is, *In re Wilshire*, 103 Fed. 620, involving an ordinance enacted by the city of Los Angeles, limiting the height of bill boards to six feet. One Wilshire was arrested for a violation of the ordinance, and asked for a writ of *habeas corpus* in the federal court of that district. The court denied the writ upon the assumption or finding that, "These (bill boards) are usually, if not invariably, cheap and flimsy affairs. constructed of wood." If they were "cheap and flimsy affairs, constructed of wood," they might possibly be dangerous and might be so limited in size, and upon the assumption or finding of the court that they were of such character, the decision might be sustained. But, the prohibition of the erection of bill boards or structures designed for advertising purposes without regard to their character and safety, and the requirements that such structures shall not be "within ten feet of any building, street, avenue or lot line" is an entirely different matter. Certain it is, that the reasoning in the *Wilshire case* apparently sustains the city's contention, but it does not appear that the case was ever carried beyond the *nisi prius* court, and it seems in *Varney v. Williams, supra,* decided by the supreme court of California, the doctrine of the *Wilshire case* is wholly disregarded, and its force and effect nullified. But, be that as it may, we consider the *Wilshire case* as standing alone, and opposed to all the authorities, erroneous in its logic and conclusions, and, not being the announcement of a court of last resort, should have but little weight.

Nor can the governing body of a municipality commit the exercise of its legislative discretion to property owners, or other private persons. Indeed

this feature of the ordinance is admitted by counsel to be invalid, and was so held by the trial court. Neither can the city entrust such power to the caprice of any of its officers, nor can it reserve to itself in its administrative, rather than its legislative capacity, an absolute or despotic power to grant or refuse permits of the character in question in particular cases, and in the absence of, or without reference to, prescribed and duly enacted rules and regulations.— *Denver v. Rogers, supra; May v. People,* 1 Col. App. 157, 159; *State ex rel. v. Withnell,* 8 L. R. A. (N. S.) 978, 982; *Yick Wo v. Hopkins,* 118 U. S. 356; *Ex parte Sing Lee,* 96 Cal. 354.

In *May v. People, supra,* the court had under consideration an ordinance prohibiting, under penalty prescribed, any person killing or dressing cattle, etc., or steaming or rendering lard, or tallow, or storing green or dry hides or pelts, within the city of Trinidad without permission from the city council. The court says: ''This ordinance does not purport to declare the storing of hides and pelts within the city limits a nuisance, but does assume that the city council may prohibit, by declining permission, or may grant permission as their inclination may prompt. They may go so far as to say that one individual may exercise the privilege, and that another equally respectable shall not.   *   *   *   Taking 'this view then of the ordinance I can reach no other conclusion than that it does not come within the authority conferred by the general laws upon a municipality; and that it is discriminating.   It is true that it may be said the city council might not discriminate in favor of one against another, but that they have reserved to themselves the power to so do cannot be denied; and also that they have reserved the right to determine when, where and by whom such an enterprise may be conducted cannot be disputed.''

It appears that the ordinance here under consideration has no real or substantial relation to the protection of the public health, the public morals, or the public safety, and imposes an unnecessary and unreasonable restriction upon the use of private property; it commits, in some instances, the exercise of the municipality's legislative discretion to property owners and residents, and in others, entrusts such power to the caprice of certain of its officers, and vests in them an absolute or despotic power to grant, refuse or revoke the right to carry on an ordinary, legitimate business.    The judgment is, therefore, reversed and the cause remanded.    *Reversed.*

Decision *en banc.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HILL not participating.