[No. 7463.]

WILLISON, Building Inspector of Denver v. COOKE.

1. DENVER—*Charter Construed*—The charter of Denver (sec. 17) authorized the city council to enact and enforce ordinances necessary to protect life, health, and property; to declare, prevent, and summarily abate nuisances; and preserve and enforce good government, the general welfare, order, and security of the municipality,

and the inhabitants thereof. *Held*, not to confer power to prohibit the erection of a store building upon lots fronting upon an ordinary street, without first obtaining the consent of the owners of the property in the same block, on each side of the street, and submitting to other burdensome restrictions.

2. CONSTITUTIONAL LAW—*Police Power—Restrictions Upon Building*—One of the essential elements of property is the right to its unrestricted use and enjoyment. Restrictions upon the use of private property are permissible only when necessary to the general health, comfort or general welfare of the public. A use of private lands which does not infringe the rights of others or impair the welfare and security of the public cannot be prohibited under the police powers of a municipality.

An ordinance which assumes to prohibit the erection, upon an ordinary street, of a store building, which, in respect of material and manner of construction complies with all local regulations, and is in no sense a menace to the health, comfort, safety or general welfare of the public, and involves no injury or insecurity to others, without first procuring the consent of the other owners of property in the same block, on each side of the street, and submitting to other burdensome regulations, is not within the implied powers of a municipal corporation, deprives the owner of his property without compensation, and without due process of law, is opposed to our bill of rights, secs. 3, 15, 25, and to the fourteenth amendment of the federal constitution, and is void.

3. PRACTICE IN THE SUPREME COURT—*Question not Presented Below*, will not be considered in the court of review. And the court will refer to the opinion of the court below, when found in the record, to determine what questions were there agitated.

*Error to Denver District Court.*—Hon. H. C. RIDDLE, Judge.

Mr. HENRY A. LINDSLEY, Mr. G. Q. RICHMOND, Mr. JOHN T. BOTTOM and Mr. A. NEWTON PATTON, for plaintiff in error.

JAMES H. BROWN, for defendant in error.

Defendant in error, as petitioner, brought an action in mandamus against the plaintiff in error, as respondent, in his official capacity as building inspector of the city and county of Denver, the purpose of which was to compel him to issue

a permit for the construction of a building on the southeast corner of Colfax avenue and Williams street. In his petition, petitioner alleged that he was the owner of the lots in question; that respondent was the duly appointed, qualified and acting building inspector of the city and county of Denver; that he applied to respondent for a permit for the erection and construction of a one-story brick store building upon his lots, to cost the sum of ten thousand dollars, and then and there submitted and filed with him plans and specifications of the proposed building, showing and describing all parts of the construction thereof, and tendered him ten dollars, the prescribed fee for the issuance of the permit requested; that the plans and specifications submitted to and filed with the inspector, indicated and showed that the work to be done in the construction of the building was in all respects in accordance with the provisions of the ordinances of the city and county of Denver; that the inspector so found, but, without lawful excuse or reason therefor other than the provisions of certain ordinances referred to by number and title, refused to issue the permit applied for. Petitioner prayed that a peremptory writ of mandamus be issued, directed to the building inspector, ordering and commanding him, upon payment or tender of the proper fee therefor, to at once issue a permit for the erection of the proposed building on the lots mentioned.

To this pleading the respondent answered, admitting that petitioner was the owner of the lots in question; alleged that they fronted on the east side of Williams street, at the corner of Colfax avenue; admitted that, in so far as the application and the plans and specifications of the proposed building were involved, they indicated that the construction of the building and the materials to be used therein, were in all respects in accordance with the provisions of the ordinances of the city and county of Denver, and that he found the plans and specifications submitted to him by the petitioner to be in full compliance with such ordinances, in so far as the character of the building or the construction thereof, and the materials to be

used therein, were concerned; but alleged that the building as.
indicated by the plans and specifications, as well as the appli-
cation for the permit to erect the same, and in so far as the
erection of the building relates to the location and construc-
tion thereof upon the premises described, did not comply with
the provisions of the ordinances of the city and county of Den-
ver.    The answer then sets out the ordinances referred to,
which are as follows:

"In the following described section or portion of the city
and county of Denver (then follows a description by refer-
ence to streets, which includes the lots in question), it shall be
unlawful to build or erect or make addition to a terrace (for
more than two (2) families), apartment house, or flat (for
more than four (4) families), store building or factory of any
kind, rooming house of more than thirty (30) rooms, hotels
or any buildings similar to those before mentioned, unless the
party desiring a building permit for any such building has
first secured and filed with the building inspector the signa-
tures of a majority of the owners of the property in the same
block, on the same side of the street, and of the owners of the
property in the block on the opposite side of the street or ave-
nue, facing same, approving of the erection of such a build-
ing, such approval to be accompanied by a certificate from
some reliable abstract company that the parties signing the
same are the owners of the property for which they signed..
Before issuing any permit for any building, as before men-
tioned, the owner must specifically agree in writing to build'
said building on a line of the average distance back from the
front line of lots as the buildings on the same side of the
street in the same block; whenever such buildings are pro-
posed to be erected on corner lots, they shall be set back from
the front face of the lots to conform to the other buildings on
the same side of the street in the same block, but may be built
up to the lot line toward the street or avenue on the long side
of the lot, provided that for the purpose of this section, the
frontage of all lots within the city and county of Denver shall

be and remain as laid out and platted at the time of the passage of this ordinance." Sec. 248, Municipal Code, as amended.

"If the matters mentioned in the application for a permit, or the plans and specifications filed with the same, indicate to the building inspector that the work to be done is not in all respects in accordance with the provisions of the city ordinances, he shall refuse to issue a permit therefor until the same has been made so to comply, when he shall issue the permit." Sec. 226, *ibid.*

"Whenever, in any block or on any street or avenue in the residence sections of the city and county of Denver, and fifty (50) per cent. of the lots in such block facing on said street or avenue have been improved, and the building line of the improvements made permanent, it shall be required that all buildings thereafter erected on adjoining lots within such block and facing on the same street or avenue must have the front building line established not nearer to the front lot line than the average distance back from the front line of the buildings already built.  *  *  *  "Sec. 250, *ibid.*

The answer then alleged that the petitioner did not secure and file with the inspector the signatures of a majority of the owners of the property in the block on the same side of the street in which the lots upon which it was proposed to erect the building are located, and the owners of property on the opposite side of the street facing the same, approving of the erection of such buildings; nor did petitioner specifically agree in writing to erect the building on a line the average distance back from the front lot line of lots that buildings on the same side of the street in the block in which his lots are situate, are constructed, nor did he agree that the building proposed to be erected should be set back from the front line of his lots to conform to other buildings on the same side of the street in the same block, but, in fact, insisted that the ordinances imposing these conditions as a condition precedent to the issuance of a permit were invalid and of no effect. The answer

further alleges that the permit was refused because of the fail-
ure of petitioner to comply with the provisions of the ordi-
nances above quoted in the particulars noted, for the reason
that to issue the permit requested in such circumstances would
be in violation of such ordinances, and contrary to the duty
and obligation of respondent as building inspector of the city
and county of Denver.   The answer does not raise any issue
upon the question that the proposed building will obstruct the
street, or sidewalk, or upon the question of fire protection or
insurance.

    To this answer a demurrer was filed by petitioner, chal-
lenging its sufficiency to constitute a defense to the petition.
This demurrer was sustained, and the respondent electing to
stand upon his answer, the court ordered that a peremptory
writ of mandamus issue, as prayed for by petitioner. The re-
spondent has brought the case here for review on error.

    Mr. JUSTICE GABBERT delivered the opinion of the court:

    From the foregoing synopsis of the answer, in connec-
tion with admissions therein of allegations in the petition, and
the ordinances set out *haec verba,* it appears that petitioner is
the owner of lots upon which he desires to erect a store build-
ing in a district which the ordinances of the municipality in-
hibit, unless he first secures and files with the building in-
spector the signatures of a majority of the owners of prop-
erty in the same block, on the same side of the street, and of
the owners in the block on the opposite side of the street fac-
ing the same, approving of the erection of such building, and
that when such approval is secured, a permit will be withheld
unless he agrees to build on a line the average distance back
from the front line of lots that buildings on the same side of
the street in the block in which his lots are situate are con-
structed; that the building which he proposes to erect complies
in all respects, according to the plans and specifications, with
the ordinances, in so far as the character of the building and
the materials to be used therein are concerned, and that the
sole defense interposed by respondent, and his only reason for

refusing a permit, is based upon the failure or refusal of petitioner to comply with the provisions of the ordinances, as above noted. In brief, the ordinances inhibit petitioner from constructing a store building upon his lots until he complies with the provisions of such ordinances upon which respondent bases his right to refuse the permit requested, and even then, petitioner must agree not to construct his proposed building nearer the front line of his lots on Williams street than the average distance back other buildings on that street are constructed, in the same block, before the permit will be granted. The important question, then, to determine, is the validity of these ordinances, in so far as they provide conditions with which petitioner did not comply, and for which reason the respondent, according to his answer, refused the permit requested.

On behalf of respondent it is contended that these provisions are a valid exercise of the police power of the city, while on behalf of petitioner it is asserted that they are not, on the ground that they are so unreasonable as to be invalid, and, if enforced, deprive him of his property without compentation. It is a fundamental law, that a municipality under our system of government may, by ordinance, require the owner of a lot to so use it that the public health and safety will be best conserved, and to this end its police power may be exercised; but it is also fundamental, that such owner has the right to erect such buildings covering such portions thereof as he chooses, and put his property, as thus improved, to any legitimate use which suits his pleasure, provided that in so doing he does not imperil or threaten harm to others.—*Curran Bill Posting Co. v. City of Denver,* 47 Colo. 221 (225); *City v. Whitlock,* 149 N. C. 542; *Bryan v. City of Chester,* 212 Pa. St. 259; *Commonwealth v. Boston Advertising Co.,* 188 Mass. 348; *Bill Posting Co. v. Atlantic City,* 71 N. Y. Laws 72.

So that legislative restrictions upon the use of property can only be imposed upon the assumption that they are necessary for the health, comfort or general welfare of the public;

and any law abridging rights to a use of property which does not infringe the rights of others, or which limits the use of property beyond what is necessary to provide for the welfare and general security of the public, cannot be included in the police power of a municipal government.—*In Re Morgan,* 26 Colo. 415 (423); *Curran Co. v. Denver, supra* (425).

Williams street is an ordinary public thoroughfare. It is not a park or park-way, and the authority of the municipality to make the provisions in question, so far as advised from briefs of counsel, is found in section 17 of the charter, which provides:

"* * * The council shall have power to enact and provide for the enforcement of all ordinances necessary to protect life, health and property; to declare, prevent and summarily abate and remove nuisances; to preserve and enforce the good government, general welfare, order and security of the city and county and the inhabitants thereof; * * *."

It will be observed that there is no express authority conferred upon the council to pass ordinances embracing the conditions and restrictions imposed as to lots fronting on an ordinary street upon which respondent relies; and hence, it is only by virtue of the incidental powers with which the municipality is vested to pass police regulations that it assumes to act in passing the ordinance in question; consequently, they are invalid, if it appears that they are unreasonable, arbitrary or oppressive.—*Phillips v. City of Denver,* 19 Colo. 179; *Curran B. P. Co. v. City of Denver, supra* (229); *City and County of Denver v. Rogers,* 46 Colo. 479.

Police regulations, in order to be valid, must tend to accomplish a legitimate public purpose; that is, such regulations must have a substantial relation to the public objects which government may legally accomplish; and while it is for the legislative department of a municipality to determine the occasion for the exercise of its police power, it is clearly within the jurisdiction of the courts to determine the reasonableness of that exercise, when, as in the case at bar, it assumes that

power by virtue of its incidental or a general grant of authority.—*C. B. & Q. Ry. Co. v. Drainage Commissioners*, 200 U. S. 561 (593); *In Re Morgan, supra* (424); *Curran B. P. Co. v. City of Denver, supra* (226).

The building which petitioner proposes to erect complies in all respects with the ordinances relating to the materials which shall be used in its construction. The lots upon which it is proposed to erect it front upon an ordinary street or public highway. A store building is in no sense a menace to the health, comfort, safety or general welfare of the public, and this is true, whether it stands upon the rear portion of the lots upon which it is erected, or is constructed to the line of the street; but even if it could be said that its construction imperiled or threatened harm to others, such objections would in no sense be removed by the consent to its construction by the majority of the owners of property in the same block on the same side of the street, and of the owners in the block on the opposite side of the street facing it; neither is it any more or less objectionable on the score mentioned, whether it be limited to the rear portion of the lots or covers them from alley to street line. It is thus apparent that the sole purpose of the regulations involved is to prevent the construction of a store building in the locality where petitioner's lots are located unless property owners, as indicated, consent; and then, if such consent is secured, to limit its construction to that portion of the lots not nearer to the front line of Williams street than the average distance back other buildings on that street in the same block are constructed. These regulations do not, in the slightest degree, have any relation whatever to the health, safety or general welfare of the public, nor do they tend, in any sense, to accomplish anything for the benefit of the public in this respect, but merely attempt to limit the petitioner in a use of his property, which does not infringe upon the rights of others. This deprives him of the fundamental right to erect a store building upon his lots covering such portions thereof as he chooses, although, by so doing, he does not im-

peril or threaten injury to others of which they can lawfully complain. A store building in a residence section of the city is not desirable, from an aesthetic point of view; but restrictions for this purpose alone cannot be upheld, as it is only those having for their object the safety and welfare of the public which justifies restricting a use of property by the owner.—*Curran Co. v. City of Denver, supra* (226); *State v. Whitlock, supra* (543); *Varney et al. v. Williams,* 100 Pac. (Cal.) 867; *City of Passaic v. Patterson Bill Posting, A. & S. P. Co.,* 62 Atl. (N. J.) 267; *Commonwealth v. Boston Adv. Co., supra.*

We must, therefore, hold that the restrictions under consideration are invalid, because they have no relation to any object which the municipality, in the exercise of its police power, may legally accomplish, and are unreasonable, arbitrary, and oppressive.

Aside from this, the ordinances in the particulars involved violate sections 3, 15 and 25 of our bill of rights, which provide:

"Section 3. That all persons have certain natural essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness."

"Section 15. That private property shall not be taken or damaged for public or private use without just compensation * * *."

"Section 25. That no person shall be deprived of life, liberty or property without due process of law."

This latter section is similar to the fourteenth amendment to the federal constitution, which declares:

"* * * Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

One of the essential elements of property is the right to its unrestricted use and enjoyment; and as we have seen, that use cannot be interfered with beyond what is necessary to provide for the welfare and general security of the public. Enforcing the provisions of the ordinances in question does not deprive the petitioner of title to his lots. He would not be ousted of possession. He would still have the power to dispose of them; but, although there would be no actual or physical invasion of his possession, he would be deprived of the right to put them to a legitimate use, which does not injure the public, and this, without compensation or any provision therefor. This would clearly deprive him of his property without compensation, and without due process of law, which our federal and state constitutions not only inhibit, but which would be repugnant to justice, independent of constitutional provisions on the subject.—*City of St. Louis v. Hill,* 116 Mo. 527; *Bill Posting Co. v. Atlantic City, supra; Commonwealth v. Boston Adv. Co., supra; City and County of Denver v. Rogers, supra.*

For these reasons, the provisions of the ordinances involved are, also, invalid.

On behalf of the respondent it is urged that mandamus is not the proper proceeding on the part of the petitioner. It appears from the opinion of the trial judge that this question was not urged or passed upon in the court below, and for this reason, we do not deem it necessary to discuss that question on review.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Decision *en banc.*