COMMONWEALTH *vs.* BOSTON ADVERTISING COMPANY.

Suffolk.    January 16, 1905. — June 20, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Metropolitan Park Commission.    Parks and Parkways.*

Under St. 1903, c. 158, § 1, authorizing the metropolitan park commissioners to " make such reasonable rules and regulations respecting the display of signs, posters or advertisements in or near to and visible from public parks and parkways entrusted to their care, as they may deem necessary for preserving the objects for which such parks and parkways are established and maintained," a rule forbidding the maintenance of business signs so near a parkway in the care of the commissioners as to be plainly visible to the naked eye of persons in the parkway, is not a reasonable regulation, being contrary to the provisions of the Constitution in taking property for a public use without providing compensation.

COMPLAINT, received and sworn to in the Police Court of Chelsea on August 10, 1904, against a corporation organized under the laws of this Commonwealth, for violation of a rule of the metropolitan park commission as stated in the opinion.

The complaint having been entered in the Superior Court, the

case came on to be heard before *Sherman*, J. upon an agreed statement of facts. The defendant requested the following rulings : 1. The regulation of the metropolitan park commission, the violation of which is alleged in this complaint, is not authorized by the provisions of St. 1903, c. 158, and therefore is void. 2. The regulation of the metropolitan park commission, the violation of which is alleged in this complaint, is unreasonable and of no legal effect. 3. The rules and regulations of the metropolitan park commission, the violation of which is alleged in this complaint, and the statute purporting to authorize the same, are unconstitutional and void. 4. On the agreed facts, the sign in question cannot as a matter of law be said to be "near to" the parkway, within the meaning of St. 1903, c. 158. 5. On all the agreed facts the defendant is not guilty.

The defendant's counsel stated that if the judge declined to make the rulings requested, the defendant would consent to a verdict of "guilty." The judge refused all of the requests, and a verdict of "guilty" was taken with the consent of the counsel for the defendant, the defendant excepting to the refusal to rule as requested. At the request of the district attorney and of the counsel for the defendant, the judge reported the case for determination by this court. If the rulings were correct, the verdict was to stand; otherwise, a new trial was to be granted, and judgment was to be entered for the defendant, or such judgment was to be entered as law and justice might require.

The case was argued at the bar in January, 1905, before *Knowlton*, C. J., *Morton*, *Lathrop*, *Loring*, & *Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*M. J. Sughrue*, First Assistant District Attorney, for the Commonwealth, submitted a brief.

*J. H. Soliday*, for the defendant.

BARKER, J. The complaint upon which the defendant was found guilty was for a violation of the rules and regulations made by the metropolitan park commission under St. 1903, c. 158. The act charged was maintaining a business sign on land near enough to the Revere Beach parkway to render the words of the sign plainly visible to the naked eye of persons in the parkway.

It appears that the sign was an advertisement of a household

utensil. The sign board was forty feet in width and seven and one half feet high, with black letters on an orange ground. The capital letters were three feet three and one half inches high and two feet ten inches wide. It is not contended that the sign was indecent or immoral, or of a nature to frighten man or beast, or in any way to cause bodily injury by falling or being blown against persons or vehicles using the way.

The defendant is in the advertising business. It had purchased from the owner of the land the right to maintain the sign until October 1, 1905, and had been paid to keep up the advertisement until December 30, 1904. Its contract with the owner of the land began on October 29, 1903, and its contract to maintain the sign was made in September, 1903.

The parkway was established in 1899. The rule or regulation charged to have been broken by maintaining the sign was established on August 20, 1903. The same sign had been in the same location before the establishment of the parkway, and ever since.

The rule or regulation forbids the erection, maintaining or display upon any land, or the outside of any building, of any commercial or business sign, poster or advertisement, within such distance of any public park or parkway in care of the commission as shall render the words, figures or devices of the sign, poster or advertisement plainly visible to the naked eye within the park or parkway, without the written permission of the commission; save that the rule is not to be construed to prevent the owner or occupant of land, building or tenement from displaying or maintaining thereon one sign or advertisement for business or commercial purposes, in size not larger than fifteen inches by twenty feet, and relating exclusively to the property on which it may be placed, or to the business thereon conducted, or to the person conducting the same.

The statute provides that the commission and also the officers having charge of public parks and parkways, "may make such reasonable rules and regulations respecting the display of signs, posters or advertisements in or near to and visible from public parks and parkways entrusted to their care, as they may deem necessary for preserving the objects for which such parks and parkways are established and maintained." St. 1903, c. 158, § 1.

The counsel for the prosecution asserts that public parks and parkways are created and maintained to contribute to the health and pleasure of the community. It has been said that they "are established for the use and enjoyment of the people while seeking pleasure and recreation, as well as at other times." No doubt the principal and controlling object for which public parks and parkways are established is that of pleasure. They are distinctively and chiefly pleasure grounds. So far as they incidentally serve to promote health by affording the means of being in the open air and the sunlight, or of taking healthful exercise, the presence or absence of signs upon neighboring lands is immaterial.

We think therefore that the well being of the ordinary person who uses a public park or parkway never can be so far affected by the visibility of signs, posters or advertisements placed on other ground as to injure his health. No doubt their presence there may hide from him fine views, or may turn into a disagreeable *ensemble* what otherwise would be a pleasing outlook, or the sign or poster or advertisement may be itself ugly, or, if not so, may be displeasing because of incongruity. At most the presence of signs, posters and advertisements upon lands or buildings near a public park or parkway is an offence against good taste, and in that way alone detracts from the pleasure only of the frequenters of such places.

We agree that the promotion of the pleasure of the people is a public purpose for which public money may be used and taxes laid, even if the pleasure is secured merely by delighting one of the senses. *Higginson* v. *Nahant,* 11 Allen, 530. *Hubbard* v. *Taunton,* 140 Mass. 467. *Attorney General* v. *Williams,* 174 Mass. 476, 479, 480. The question here is not of the power of the State to expend money or to lay taxes to promote æsthetic ends, or to regulate the use of property with a view to promote such ends. It is of the right of the State by such regulations to deprive the owner of property of a natural use of that property without giving compensation for the resulting loss to the owner.

Probably no one would care at present to deny that without compensation "the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the

governing authority of the country essential to the safety, health, peace, good order and morals of the community." Field, J. in *Crowley* v. *Christensen,* 137 U. S. 86, 89. Beyond the purposes named there are many others of a public nature, the promotion of which may involve the taking or damaging of the property of individuals, and as to which there well may be differences of opinion as to whether the State must afford compensation if such loss or damage is inflicted.

One of them is the education of youth. Probably all will agree that judged by any fair standard the promotion of education stands upon a higher plane than the promotion of æsthetic culture or enjoyment, and would the better justify the imposition of a burden without compensation. But no one would contend that the State could authorize the taking of land for a schoolhouse without providing compensation for the owner. In a very recent case this court in dealing with a statute requiring street railway companies to transport school children at reduced rates of fare has held that if it appeared that the enforcement of the act would cause expense which the carrier must bear or put upon other patrons, we should be obliged to hold that there was a taking of property without due process of law. *Commonwealth* v. *Interstate Consolidated Street Railway,* 187 Mass. 436. If the police power technically so called will not justify a taking of property without compensation to promote the education of youth, it cannot justify such a taking for the promotion of merely æsthetic purposes.

Therefore if the rules of the commission amount to a taking of property, as no compensation is provided they cannot be held valid. The plain and intended purpose of the rule is to prohibit the use of land near public parks and parkways for advertising. This has come to be an ordinary and remunerative use of lands near largely travelled streets, parkways, public parks, railroads and other places frequented in numbers by the public. It is as natural a use of such lands as is the use of store fronts and show windows for the display of goods kept for sale, or for other modes of advertising. It resembles the placing of advertising pages on each side of the literary portion of a periodical or the placing in street cars or railway stations of advertisements disconnected with the business of transportation. All these at

present are usual, common and profitable uses of property, of which every one sees daily numerous instances.

In the opinion of a majority of the court the rules or regulations established by the commission so interfere with the use of property as to amount to a taking of property for public use, and, as no compensation is provided for, the rules are void, because obnoxious to the provisions of our Constitution. Declaration of Rights, art. 10. They are not reasonable within the meaning of St. 1903, c. 158, § 1.

We do not hold that no valid rules as to signs, posters or advertisements on land near to public parks or parkways can be made under St. 1903, c. 158.

Rules intended to prohibit advertisements of indecent or immoral tendencies, or signs dangerous to the physical safety of the public, no doubt would be reasonable within the meaning of the statute and valid.

We think the case of *Rochester* v. *West*, 164 N. Y. 510, was decided and can rest only on this ground. See *Gunning System* v. *Buffalo*, 75 App. Div. (N. Y.) 31; *People* v. *Green*, 85 App. Div. (N. Y.) 400.

*Verdict set aside; judgment to be entered for the defendant.*