GENERAL OUTDOOR ADVERTISING COMPANY *v.* CITY OF INDIANAPOLIS, DEPARTMENT OF PUBLIC PARKS.*

[No. 25,253. Filed June 27, 1930.]

*Reported and annotated 72 A. L. R. 453.

*Jackiel W. Joseph* and *William J. Henley,* for appellant.
*Telford B. Orbison,* City Attorney of Indianapolis, and
*Warrick Wallace,* for appellee.

MARTIN, J.—Thomas Cusack Company, for which the appellant was afterwards substituted as a party, sued to enjoin the board of park commissioners of the city of Indianapolis from interfering, by authority of an ordinance enacted under §8, ch. 144, Acts 1919, as amended by §1, ch. 32, Acts 1920 (Spec. Sess.), §10625 Burns 1926, with its maintenance and operation of advertising signs or billboards located within 500 feet of certain parks and boulevards.

The attorney for the board of park commissioners approved the form of an entry for a restraining order which was issued by the trial court in July, 1923, but failed to enter an appearance for the board in the cause—which was No. A22126 in the Marion Superior Court—and the board was defaulted February 5, 1924, a judgment of permanent injunction being rendered at that time against the appellee board. Some time after March 15, 1924, this attorney discovered the default judgment, and, on July 30, 1925 (a year and a half after the judgment was rendered), proceeding under ch. 115, Acts 1921, §423 Burns 1926, he brought suit to set it aside, on the ground that it was taken against the board through mistake, inadvertence, surprise or excusable neglect, such suit being entitled *City of Indianapolis, etc.*, v. *Thomas Cusack Company* and numbered A32126 in the same court. The trial of cause No. A32126 on April 13, 1926, resulted in a decision and judgment in favor of the plaintiff board, setting aside the default judgment and reinstating cause No. A22126.

The board of park commissioners thereupon filed in said cause No. A22126 a demurrer to the complaint of the Cusack company, which demurrer was sustained by the court. An amended complaint was then filed by the General Outdoor Advertising Company, which had succeeded to the business of the Cusack company and had been substituted as the party plaintiff. The personnel

of the board of park commissioners having changed, the names of the new members were substituted for the former members, and the demurrer of the board to the amended complaint was also sustained. Upon plaintiff's refusal to plead over, judgment against the advertising company was rendered, from which this appeal was taken.

The appellant has attempted, by this appeal, to present alleged errors occurring in the proceedings in both causes Nos. A22126 and A32126. Other than to remark that this is "an appeal in two causes which, under our practice, come to this court under one number," appellant shows no authority for this unusual procedure, and we know of none. (It will be noted that subsequent to the passage of ch. 115, Acts 1921, §423 Burns 1926, proceedings to set aside default judgments are independent original actions and not ancillary proceedings in the case in which the default was taken.)

The first four errors assigned and relied upon for reversal are alleged to have been made by the court in cause No. A32126, while the 5th to 9th errors assigned are alleged to have been made in cause No. A22126. The 10th alleged error was the overruling of appellant's motion for a new trial. This motion, which was filed in No. A22126, "prays the court for a new trial in the above entitled cause and in cause No. A32126," and the three reasons alleged in it refer to "the decision of the court in cause No. A32126." In no event could this motion be effective in either case. There was no trial in No. A22126 to be reached by a motion for a new trial, and the motion was not filed until July 3, 1926, more than 30 days after the decision was rendered in No. A32126. §612 Burns 1926.

This court cannot determine in this appeal any of the errors which are alleged to have occurred in the trial of No. A32126. Appellant prayed an appeal in both cases, filed his *praecipe* for a transcript of

the record in both cases, and assigned errors as above indicated, but this court does not have jurisdiction to determine an appeal from a judgment relieving a party from a judgment taken against him through his mistake, inadvertence, surprise or excusable neglect (that jurisdiction being in the Appellate Court, Acts 1925, ch. 201, §1356 Burns 1926), and if it did have such jurisdiction and also had jurisdiction to determine both cases in one appeal, we would hold that appellant waived any errors occurring in No. A32126 when it agreed to a substitution of parties both plaintiff and defendant, and filed an amended complaint containing additional and different allegations from those contained in the original complaint.

The 5th, 6th and 7th alleged errors are that the court erred in sustaining appellee's demurrer to appellant's complaint and amended complaint; the 8th and 9th are that the court erred in sustaining appellee's motion to dissolve the restraining order granted appellant, and in rendering judgment in favor of appellee.

The amended complaint alleges that appellant is engaged in the business of outdoor advertising by means of signboards and billboards along the public streets of Indianapolis; that it has leases obtained prior to January 1, 1920, for terms of from three to 20 years on vacant lots fronting on various boulevards and parks, on which billboards are erected; that the advertising matter displayed is of reputable business concerns and that no illegal or immoral advertising is carried thereon; that the billboards are erected of sheet-iron and wood, safe against the dangers of wind, fire and the elements, upon concrete foundations built into the ground, all in conformity to the city building ordinance, and decorated in an artistic manner, and that the boards and premises are maintained in a first class, clean and sightly condition. An exhibit lists 162 panels or billboards (more than half of them being illuminated panels) which are maintained by

appellant at 31 locations within 500 feet of boulevards or parks, and the complaint also alleges that the value of appellant's said property, together with its leases and real estate is $125,000. Section 1, ch. 32, Acts 1920 (Spec. Sess.), §10625 Burns 1926 is set out (quoted in part *infra*), and General Ordinance No. 1, 1922, of the board of park commissioners of Indianapolis passed July 8, 1922, which prohibited and abated the placing and operation of advertising billboards within 500 feet of any park or boulevard, is made an exhibit (also quoted in part *infra*). The complaint then alleges that the ordinance is invalid for failing to make provision to compensate appellant for the destruction of its business maintained in and along parks and boulevards, and because it imposes unusual, unnecessary and oppressive restrictions and prohibitions upon said business; and that the said law and the ordinance violate §21, Art. 1, Constitution, §73 Burns 1926, in that they undertake to take appellant's property without just compensation, and violate §1, Fourteenth Amendment, United States Constitution, in that they seek to deprive appellant of its property without due process of law.

When a municipal corporation exercises its police power, the courts will not interfere unless there has been a clear abuse of discretion, 43 C. J. 307; and where, as here, the police power is exercised through an ordinance enacted under express statutory authority, the courts cannot determine the reasonableness of the ordinance or question the same except upon constitutional grounds. 43 C. J. 303; *Beiling* v. *City of Evansville* (1896), 144 Ind. 644, 42 N. E. 621, 35 L. R. A. 272; *Stuck* v. *Town of Beech Grove* (1929), 201 Ind. 66, 163 N. E. 483.

Municipal corporations, under the police power, either by implied authority (*Cream City Bill Posting Co.* v.

*City of Milwaukee* [1914], 158 Wis. 86, 147 N. W.
25) or under express statutory authority (*Thomas
Cusack Co.* v. *City of Chicago* [1917], 242 U. S.
526, 37 Sup. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A 136,
Ann. Cas. 1917C 594; Id. [1914], 267 Ill. 344, 108 N. E.
340, Ann. Cas. 1916C 488), may reasonably control and
regulate the construction and maintenance of advertising
billboards. They may prescribe a secure manner of con-
struction, compel the use of safe materials, limit the size,
length, height and location with reference to streets,
require clean and sanitary maintenance thereof, and
prohibit indecent or immoral advertisements thereon,
provided such regulations have some reasonable tendency
to protect the public safety, health, morals or general
welfare and do not unnecessarily invade private property
rights. *City of Rochester* v. *West* (1900), 164 N. Y. 510,
58 N. E. 673, 53 L. R. A. 548, 79 Am. St. 659; *St. Louis
Gunning Adv. Co.* v. *City of St. Louis* (1911), 235 Mo.
99, 137 S. W. 929; *State* v. *Staples* (1911), 157 N. C. 637,
73 S. E. 112, 37 L. R. A. (N. S.) 696; *Ex parte Savage*
(1911), 63 Texas Crim. 285, 141 S. W. 244, Ann. Cas.
1913D 951; *Thomas Cusack Co.* v. *City of Chicago, supra;
Cream City Bill Posting Co.* v. *City of Milwaukee, supra;
Horton* v. *Old Colony Bill Posting Co.* (1914), 36 R. I. 507,
90 Atl. 822, Ann Cas. 1916A 911; *St. Louis Poster Adv.
Co.* v. *City of St. Louis* (1919), 249 U. S. 269, 39 Sup. Ct.
274, 63 L. Ed. 599; *State, ex rel.,* v. *Hauser* (1922), 17
Ohio App. 4.

In *St. Louis Poster Adv. Co.* v. *City of St. Louis, supra,*
the United States Supreme Court held that no rights
under the Fourteenth Amendment, United States Con-
stitution were abridged by a municipal ordinance regu-
lating the size and construction of billboards and their
location with reference to the ground, to buildings, to
the boundaries of the lot, to other buildings and to the
street line. The court said it was not material that the

complaining billboard owner had eliminated dangers from fire and wind or that the restrictions as to size would not permit the display of posters of standard size, and, citing its previous decision in *Thomas Cusack Co.* v. *City of Chicago, supra,* said: "Billboards properly may be put in a class by themselves and prohibited 'in residence districts of a city in the interest of the safety, morality, health and decency of the community.'" In *Thomas Cusack Co.* v. *City of Chicago, supra,* the court held valid an ordinance which prohibited the erection of billboards over a certain size in any block in which one-half of the buildings on both sides were used exclusively for residence purposes, without first obtaining the written consent of the owners of a majority of the frontage. On the question of the reasonableness of the ordinance, there was evidence of combustible materials, unsanitary conditions, and that the billboards afforded convenient shields for immoral practices, loiterers and criminals, which the court said was sufficient to justify the prohibition of billboards, and that it would "interfere with the action of such authority (local legislative authority in enacting the ordinance) only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare." In *Oppenheim Apparel Corporation* v. *Cruise* (1922), 118 Misc. Rep. 368, 194 N.Y. Supp. 183, it was held that an ordinance prohibiting the use of illuminated signs in a certain section of the city was not void in the absence of an allegation of facts tending to show the ordinance arbitrary or unreasonable or unlawfully discriminatory in favor of all other localities.

Under a liberalized construction of the general welfare purposes of state and federal constitutions, there is a trend in the modern decisions (which we approve) to foster, under the police power, an aesthetic and cultural side of municipal development—to pre-

vent a thing that offends the sense of sight in the same manner as a thing that offends the senses of hearing and smelling. 3 McQuillen, Municipal Corporations (2d) 1049; *Ware* v. *City of Wichita* (1923), 113 Kans. 153, 157, 214 Pac. 99; *State, ex rel.*, v. *City of New Orleans* (1923), 154 La. 271, 97 So. 440, 33 A. L. R. 260[1]; *State, ex rel.*, v. *Harper* (1923), 182 Wis. 148, 158, 196 N. W. 451, 33 A. L. R. 269; *Cochran* v. *Preston* (1908), 108 Md. 220, 70 Atl. 113, 23 L. R. A. (N. S.) 1163, 129 Am. St. 432, 15 Ann. Cas. 1048. But this trend must be kept within reasonable limitations, for citizens must not be compelled under the police power to give up rights in property solely for the attainment of aesthetic objects. *Welch* v. *Swasey* (1907), 193 Mass. 364, 375, 79 N. E. 745, 23 L. R. A. (N. S.) 1160, 118 Am. St. 523; Id., 214 U. S. 91, 29 Sup. Ct. 567, 53 L. Ed. 923; *Opinion of Justices* (1920), 234 Mass. 597, 604, 127 N. E. 525. See, also, *Mayor, etc., of Wilmington* v. *Turk* (1925), 14 Del. Ch. 392, 129 Atl. 512. It has often been held that a city may not prohibit billboards therein merely because such boards are unsightly, *State* v. *Whitlock* (1908), 149 N. C. 542, 63 S. E. 123, 128 Am. St. 670, 16 Ann. Cas. 765, and note 766, 768; *Bryan* v. *City of Chester* (1905), 212 Pa. St. 259, 61 Atl. 894, 108 Am. St. 870; *Varney & Green* v. *Williams* (1909), 155 Cal. 318, 100 Pac. 867, 21 L. R. A. (N. S.) 741, 132 Am. St. 88, and, under the law as it exists today, aesthetic or artistic considerations alone are not considered sufficient to warrant the exercise of the police power to prohibit advertising billboards gen-

---

[1]In sustaining a zoning ordinance of the city of New Orleans, under which a retail grocery store (Piggly-Wiggly) was excluded from a residence district, the court said: "If by the term 'aesthetic considerations' is meant a regard . . . for outward appearances, for good taste in the matter of the beauty of the neighborhood itself, we do not observe any substantial reason for saying that such a consideration is not a matter of general welfare. The beauty of a . . . residence neighborhood . . . is for the comfort and happiness of the residents, and it sustains . . . the value of the property in the neighborhood."

erally throughout a city, because such considerations, of themselves, are not such a necessity as justifies the taking of private property without compensation. 3 McQuillen, Municipal Corporations (2d) 80-83, 220, 221; 43 C. J. 228, 324. But aesthetic considerations enter in, to a great extent, as an auxiliary consideration,[2] where the regulation has a real or reasonable relation to the safety, health, morals or general welfare, *Ayer* v. *Cram* (1922), 242 Mass. 30, 136 N. E. 338; *Opinion of the Justices, supra; Welch* v. *Swasey, supra; St. Louis Poster Adv. Co.* v. *City of St. Louis, supra; Ware* v. *City of Wichita, supra; State, ex rel.,* v. *City of New Orleans, supra;* and, where a regulation of billboards does not apply to an entire city, but merely applies to billboards in close proximity to public parks and boulevards, it may properly have a relation to the public health, comfort and welfare which it would not otherwise possess.

Parks are set apart and maintained by cities as places conducive to the health, pleasure, comfort and amusement of the public. An enjoyment of fresh air and sunshine, and also the grass, flowers and trees, is most important in securing the social, physical and moral well

---

[2]In an interesting article, "Attitude of Law toward Beauty," Mr. Henry P. Chandler, in the American Bar Association Journal, August 1922, page 470, says: "The law . . . in recent years, is . . . coming to take beauty into account as worthy of consideration. . . . It is now universally conceded that beauty may constitute an element in the public welfare which will justify the power of condemnation. . . . When we come to . . . the recognition of beauty as an element to justify the exercise of the police power . . . the courts have not been willing to acknowledge beauty as a justification, but without admitting it they are more and more giving weight to the consideration of fitness and propriety in a man's use of his own. They may profess to put their decisions on other grounds but in their hearts this is the directing motive. The approval of ordinances directed against billboards is a case in point. . . . With . . . the fantastic argument that billboards are a menace to public safety, the courts have given aid to the movement for protection against this disfigurement (*Thomas Cusack Co.* v. *City of Chicago* [1917], 242 U. S. 526). Has the time not come . . . when the courts will . . . frankly approve reasonable regulation of the use of property in the interest of beauty? There are indications that way. One of them is the provision very generally made by American cities and sanctioned by law for city planning."

being of the people, and parks as a means of providing these bounties of nature for all the people have come to be considered as essentially necessary. 46 C. J. 1373; 20 R. C. L. 637. Parks are usually laid out, ornamented and embellished in such a way as to afford pleasure to the eye as well as to furnish a place for the resort of the public for recreation and exercise, and it is only reasonable that the surroundings of a park should be kept in harmony therewith if practicable to do so. The boulevards referred to in the case at bar are a part of the park system of the city of Indianapolis. Commercial traffic is not permitted thereon, and they are improved, maintained and controlled by the board of park commissioners in the same manner as are the city parks (§10629 Burns 1926). Boulevards are treated in law in many respects different from streets. 3 McQuillen, Municipal Corporations (2d) 347, 348.

Many billboards, as now constructed, are well designed and attractive, and much of the advertising matter placed thereon is artistic and instructive. Whether an advertising billboard is a disfigurement or a desirable addition to a community depends upon the character of the surroundings in the community, as well as upon the billboard advertising itself. But the determination of such a question and the determination of what regulations or what prohibitions within certain areas there shall be of billboards under the police power is (subject to the limitations hereinbefore stated) for the legislative body of the city.

In *Liggett's Petition* (1927), 291 Pa. St. 109, 139 Atl. 619, a large advertising signboard, 30 feet high and 300 feet long, equipped with electric appliances, transformers, time clocks, etc., was erected by appellants in the city of Pittsburgh in a district designated by a zoning ordinance as "B—residence district." The legislative act authorizing the ordinance empowered the city "in

the interest of public health, safety and general welfare
. . . to regulate and restrict the location of trades and
industries, the location of buildings designed for specified
uses, and to divide the city into districts of such a num-
ber, shape, and area as it may deem best suited for the
purposes," and that "for each such district, regulations
may be imposed, designating the trades and industries
which shall be excluded or subjected to special regula-
tions." The ordinance excluded from all residential
zones signs or billboards of the nature and character
erected by appellant, and the court upheld the validity
of such law and ordinance and affirmed the judgment
sustaining the action of the municipal authorities in re-
fusing to renew the permit for the sign and ordering the
same removed.

As social relations become more complex, restrictions
on individual rights become more common. Restrictions
which years ago would have been deemed intolerable
and in violation of the property owners' constitu-
tional rights are now desirable and necessary, and zon-
ing ordinances fair in their requirements are usually
sustained. *Village of Euclid* v. *Ambler Realty Co.*
(1926), 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303,
54 A. L. R. 1016; *Inspector of Buildings, etc.,* v. *Stoklosa*
(1924), 250 Mass. 52, 145 N. E. 262, 264; *State, ex rel.,*
v. *Houghton* (1925), 164 Minn. 146, 150, 204 N. W. 569,
54 A. L. R. 1012; *State* v. *Robertson* (1929), 197 N. C.
657, 150 S. E. 674; *Miller* v. *Board of Public Works*
(1925), 195 Cal. 477, 234 Pac. 381, 38 A. L. R. 1479;
*Pritz* v. *Messer* (1925), 112 Ohio St. 628, 149 N. E. 30.
A preponderant majority of the courts of the several
states have upheld the validity of the so-called city
planning or zoning laws, which create restricted resi-
dence districts and prevent the establishment of business
enterprises therein. It is stated in 3 McQuillen, Munici-

pal Corporations (2d) 369-375, that 17 out of 26 states hold them valid, and an examination of the cases decided subsequent to the preparation of that text shows that they are now held valid in at least 30 out of 33 states wherein the question has been considered.[3] See cases collected under heading "Municipal Corporations," key number paragraph 601, Current Digest, 1927-30. See, also, cases cited in notes: 64 A. L. R. 920; 43 A. L. R. 668; 38 A. L. R. 1496; 33 A. L. R. 287; 19 A. L. R. 1395. A zoning law (§§10372-10380 Burns 1926) and ordinances enacted thereunder have been in effect in this state and in municipalities thereof for eight or nine years, and their constitutional validity has never been questioned in this court. Under laws and ordinances of this character, many regulations and limitations of structural design and property use have been upheld which bear no closer relation to the public safety, health, morals and general welfare, or public comfort, convenience and prosperity (which latter terms are also included in the recent cases, 3 McQuillen, Municipal Corporations [2d] 355) than does the ordinance concerning billboards in the instant case. 43 C. J. 333-345.

The allegations of the complaint respecting the safe and substantial construction of appellant's billboards, the clean and sightly maintenance of its boards and premises, and the nature and character of the advertising thereon, negative the existence of the facts which the courts in the cases hereinbefore cited have held constitute billboards nuisances, and, under such allegations, these billboards are not nuisances *per se*. The Legislature may enact regulations applicable to

---

[3]Some of these cases were decided in states whose constitutional delegation of legislative authority is similar to our own, while others were in states whose constitutions differ from ours. In some states where it was formerly held that their constitutions did not confer legislative authority for such enactments, constitutional amendments were made to provide such authority.

structures and uses which existed before the enactment, but, where such structures and uses are not nuisances *per se*, their removal or destruction cannot be ordered without just compensation. 43 C. J. 328, 329, 401; *Ley* v. *Cash* (1912), 12 Ohio N. P. (N. S.) 523; *Crossman* v. *City of Galveston* (1923), 112 Texas 303, 247 S. W. 810, 26 A. L. R. 1210. Thus, it was held in *Illinois Life Ins. Co.* v. *City of Chicago* (1927), 244 Ill. App. 185, that a city cannot prevent the use of a sign erected on a building prior to the passage of a zoning ordinance unless it is a nuisance *per se*. It is not the usual legislative practice to make such laws and ordinances retroactive, and, in *Whitmier & Filbrick Co.* v. *City of Buffalo* (1902), 118 Fed. 773, it was said: "Such structures are not *per se* illegal by reason of this ordinance, which has been declared valid. The ordinance cannot be retroactive."

The ordinance in question here requires the removal of appellant's billboards, but does not provide for compensating appellant therefor. Chapter 32, Acts 1920, §10625 Burns 1926 (under authority of which the ordinance was enacted), however, does (in our opinion, but contrary to the appellees interpretation thereof), provide for the payment of due and full compensation for the lawful business being conducted by appellant, including its billboards. This section of the law is poorly constructed, and is not as definite and certain as it should be. An examination of the act (§1, ch. 32, Acts 1920 [Spec. Sess.], at pages 105-107) indicates that certain words therein are interchanged, that certain words are omitted, and a comparison of the printed act with the enrolled act in the office of the Secretary of State shows that lines 10 and 11 on page 106 should be interchanged with lines eight and nine. The compiler of Burns statutes (apparently in an effort to make the section more intelligible) inserted, in brackets at five different places in the section, a total of 17

words not found in the official acts.    That portion of the section, by authority of which General Ordinance 1, 1922, of the board of park commissioners was enacted, reads as follows:

> "Whenever it shall be considered necessary by such board of park commissioners, in order to promote public health, safety, morals or general welfare, such board shall have the power, by general order or resolution, to abate, restrict, forbid or regulate any horse-racing, gambling, offensive or dangerous business or amusement, and to regulate, restrict and forbid the location of trades, industries and commercial enterprises and the location of buildings or 'devices,' designed for uses which, in such order or resolution, are specified as injurious to the public health, safety, morals or general welfare, within five hundred feet of any such park, parkway or boulevard; and the right to restrict the use of such adjacent lands for any such purposes shall be deemed to be included in any gift, donation, acquisition or condemnation in this act provided for. *But no lawful business being conducted upon such adjacent lands at the time of acquiring the same shall be prohibited or abated without a fair valuation and due and full compensation.*"    (Our italics.)

Some difficulty has been encountered in determining the exact meaning of the last sentence above quoted and italicised.    Appellant maintains that the phrase "acquiring the same" refers to the "lawful business" at the time the business becomes or is located upon "adjacent lands" by the laying out of the parkway and establishing its lines in a lawful way, and that "acquiring the same" should be read "[acquiring] prohibiting or abating the same."    Appellee contends that the phrase "acquiring the same" refers to "adjacent lands" in those cases only in which the board of park commissioners, in pursuance of the powers given in the first part of this section (not quoted above), establishes a building line and acquires an

interest in the land between such line and the park or boulevard. In considering this contention, however, it will be noted that express provision is made in the first part of the section for condemnation and assessment of benefits and damages to property in the matter of establishing a building line. We believe it most likely that the Legislature used the words "adjacent lands" in the last sentence of the section as quoted above in the same sense as in the preceding sentence quoted, and, as used therein, it clearly has reference to land within 500 feet of the park or boulevard over which the board is given authority to abate, restrict, forbid or regulate certain businesses, amusements, trades, industries, etc. And we believe that the words "acquiring the same" refer to the acquiring of control or jurisdiction and supervision over the adjacent lands and the business, billboards (devices), amusements, etc., located thereon, rather than to the acquiring of legal title to the land. Thus construed—and this, we believe, is the only reasonable construction that can be had—ch. 32, Acts 1920 (Spec. Sess.), requires that, before the lawful billboard advertising business being conducted by appellant upon such adjacent lands can be prohibited or abated, the appellant shall be paid due and full compensation at the fair present valuation of its existing business, boards and leases for and during the term which they have to run.

Ordinance No. 1, 1922, of the Board of Park Commissioners of the city of Indianapolis provides that:

"No sign, . . . billboard or advertising device or structure . . . shall be located, erected, placed, maintained, used or operated . . . within 500 feet of any park, parkway or boulevard . . . and the owners [and] lessees. . . of any real or personal property located within said 500 feet are . . . prohibited from leasing or allowing such property to be , . . used . . . for such purposes or

business. . . *and that all such signs . . . billboards or advertising devices. . . now located within 500 feet of any park, parkway or boulevard . . . are hereby ordered removed, and the owners thereof . . . lessees . . . or parties in possession . . . are hereby ordered to abate, abolish and cause to be removed all such signs, . . . billboards or advertising devices . . . within 500 feet of any park, parkway or boulevard within the city of Indianapolis.*"

The portion of the ordinance italicized above cannot be enforced against this appellant (under the facts alleged in its complaint) unless and until the requirements of ch. 32, Acts 1920 (Spec. Sess.), regarding compensation have been complied with. The appellant's complaint, in addition to its other essential allegations hereinbefore referred to, alleges that it has not been compensated for its business, and the trial court erred in sustaining the appellee's demurrer thereto. Our conclusion with reference to the remaining portion of the ordinance and to the law under which it was enacted is that they are valid and are not in conflict with any provision of the state or federal constitutions.

We are not unmindful of the fact that there are many cases in apparent conflict, or at least not in complete accord, with the cases cited herein, which sustain the authority of municipal corporations to control the erection and maintenance of advertising billboards, and to prohibit them in specified sections of a city. While practically all of these cases recognize generally that the city has the power to regulate billboards, some of them have declared certain regulations (as to height, distance from street, etc.) to be unreasonable and void, or to be based on considerations which do not affect the public health, safety, welfare, etc., *Crawford* v. *City of Topeka* (1893), 51 Kans. 756, 33 Pac. 476, 20 L. R. A. 692, 37 Am. St. 323; *City of Passaic* v. *Patterson Bill Posting, etc., Co.* (1905), 72 N. J. Law 285, 62 Atl. 267, 111 Am.

St. 676; *State* v. *Whitlock, supra; People, ex rel.,* v. *Murphy* (1909), 195 N. Y. 126, 88 N. E. 17, 21 L. R. A. (N. S.) 735; *Curran Bill Posting, etc., Co.* v. *City of Denver* (1910), 47 Colo. 221, 107 Pac. 261, 27 L. R. A. (N. S.) 544; and, in the following cases, it was held that the right to the use of property is unconstitutionally interfered with by statutes and regulations which forbid the erection and maintenance of advertising signs and billboards within a given distance of public parks or boulevards: *Commonwealth* v. *Boston Advertising Co.* (1905), 188 Mass. 348, 74 N. E. 601, 69 L. R. A. 817, 104 Am. St. 494; *Haller Sign Works* v. *Physical Culture Training School* (1911), 249 Ill. 436, 94 N. E. 920, 34 L. R. A. (N. S.) 998; *City of Chicago* v. *The Gunning System* (1905), 214 Ill. 628, 73 N. E. 1035, 70 L. R. A. 230, 2 Ann. Cas. 892; *Kansas City Gunning Co.* v. *Kansas City* (1912), 240 Mo. 659, 144 S. W. 1099; *State, ex rel.,* v. *Rapp* (1914), 16 Ohio N. P. (N. S.) 1. Most of these cases were decided prior to the complete development of the law concerning the regulation of billboards, and all of them were decided prior to the decision of the many cases approving the so-called "zoning laws." Recent cases in the states last above cited have upheld zoning laws and ordinances, (*Inspector of Buildings, etc.,* v. *Stoklosa, supra; City of Aurora* v. *Burns* [1925], 319 Ill. 84, 149 N. E. 784; *State, ex rel.,* v. *Christopher, etc.* [1927], 317 Mo. 1179, 298 S. W. 720; *Pritz* v. *Messer, supra*), and it is reasonable to presume that, if cases wherein laws and ordinances sought to prohibit billboards within close proximity to public parks and boulevards were to be decided today in those states, they would reach the same result as was reached in *Liggett's Petition, supra,* and as is reached in the case at bar.[4]

---

[4]The court in *Commonwealth* v. *Boston Advertising Co., supra,* said that "the well being of the ordinary person who uses a public park or parkway never can be so far affected by the visibility of signs, posters

The judgment is reversed, with directions to overrule appellee's demurrer to the amended complaint.

Myers and Travis, JJ., concur in the conclusion.

or advertisements placed on other ground as to injure his health," although "their presence there may hide from him fine views, or may turn into a disagreeable *ensemble* what otherwise would be a pleasing outlook or . . . may be displeasing because of incongruity [or may be] . . . an offense against good taste."   The court there likens the use of billboards near "largely traveled streets, parkways, public parks, railroads and other places frequented in numbers by the public," unto the use of "store fronts and show windows for the display of goods kept for sale," but it must be remembered that, since that case was decided (1905), courts have recognized generally that aesthetic considerations may be considered along with other factors determining the question of the general welfare, and that the courts in a majority of our states (including the court which made the statement above quoted) have upheld laws and ordinances prohibiting even stores and shops in certain sections of cities.

It will be noted that in the cases of *Commonwealth* v. *Boston Adv. Co.*, *supra*, and *Haller Sign Works* v. *Physical Culture Training School*, *supra*, the billboards involved were not nuisances *per se*, and were in place at the time the law or regulation went into effect.   In this respect, they were like the case at bar, and, so far as concerns such billboards, the results they reached were the same as in the case at bar, but we believe the reasoning by which such results were reached is not in line with the modern trend of the law.