## MURPHY, INC. ET AL.
*vs.*
## TOWN OF WESTPORT ET ALS.

Superior Court        Fairfield County        File No. 66548

MEMORANDUM FILED DECEMBER 31, 1943.

*Friedman & Friedman*, of Bridgeport, for the Relators.

*John H. Mountain*, of Westport, for the Respondents.

O'SULLIVAN, J. Murphy, Inc., a Connecticut corpora-
tion, operating out of Bridgeport, is an outdoor advertising
concern, engaged, among other things, in the erection and
maintenance of billboards, space on which it sells to those
desiring to advertise commercial products. The unnamed
plaintiff, John Backiel, owns a parcel of land adjoining the
Post Road, so-called, in the Town of Westport and a portion
of this parcel he has leased to Murphy, Inc. His land is
zoned for business from the highway to a depth of 200 feet.

The Post Road consists of four lanes of concrete. An in-
dication of the heavy flow of traffic it accommodates is revealed
by records of the State Traffic Commission, which show that
the average daily number of vehicles moving in both direc-
tions over the highway was 11,387 in 1940, 13,526 in 1941,
and 12,087 in 1942. In normal times, traffic may proceed at
45 miles an hour in the vicinity of the Backiel parcel, al-
though this rate has been reduced to 35 miles during the war
emergency.

Westport, with a population of 8,258, is primarily a com-
munity of homes. Of the total area of the township, more
than 90 per cent is devoted to residential purposes. On
September 8, 1930, the town adopted a zoning ordinance,
section 4-B of which provides that "billboards or advertising
signboards are prohibited in all business districts except as
they refer to business conducted on the property on which
the billboard stands." The ordinance is devoid of any pro-
visions regulating the method of constructing billboards. Prior
to the day it became effective, Murphy, Inc., had erected and
was maintaining along the five miles of the Post Road running
through the town 15 billboards, consisting of 40 panels, each
approximately 15 by 25 feet in size. Of these 15, 14 were
located along that portion of the highway stretching easterly
from the business center of Westport some three and a half
miles to the adjoining town line of Fairfield. All of these
billboards, except so much as represents seven panels which
have been discarded, are still standing and are maintained as
nonconforming uses.

On April 23, 1942, one of the 14 locations above referred to
was on property of E. P. Mills. About that time the lease
of the Mills site to Murphy, Inc., expired and the latter at-
tempted to move the billboard thereon to the Backiel parcel,
some 800 feet further east. While in the process of setting

it up on Backiel's land, the workmen were stopped by a zoning enforcement officer. On April 25th, Murphy, Inc., applied for a permit to erect the billboard which was about 12 by 30 feet, but the request was denied. Murphy, Inc., then appealed to the zoning board of appeals, but without effective result.

Following these events, the plaintiffs brought the present action to this court seeking (1) an injunction to restrain the enforcement of the ordinance in so far as it affects the use of the Backiel parcel for the erection of billboards; (2) a declaratory judgment that the ordinance is void, unenforceable and unconstitutional as it purports to affect the use of a billboard. on the Backiel parcel; (3) a mandatory injunction ordering the issuance of a permit to erect the billboard in question.

Although the plaintiffs urge many claims in support of their position, only one or two of them will be discussed.

The now well-recognized right of a municipality to zone its territory finds its derivation in the police power, that prerogative of the State which, in the cause of public morals, safety, welfare and the like, may regulate the use of privately owned property. State vs. Hillman, 110 Conn. 92. The legal concept of the ambit in which the police power may function has broadened considerably in recent years. It had to, if zoning ordinances were to be justified. While regulatory measures of various kinds had long been submitted to the courts, the century had turned before agitation for zoning, as we know it, culminated in statutory authority to carry it into effect. Indeed, it so happens that billboard regulation was one of the first forces tending in that direction. Such regulation was originally deemed invalid as an unwarranted exercise of the police power. Commonwealth vs. Boston Advertising Co., 188 Mass. 348, 74 N.E. 601; City of Passaic vs. Paterson Bill Posting Co., 72 N.J.L. 285, 62 Atl. 267; Bryan vs. City of Chester, 212 Pa. 259, 61 Atl. 894.

About 1910, certain courts began to entertain a different point of view. St. Louis Gunning Advertisement Co. vs. City of St. Louis, 235 Mo. 99, 137 S.W. 929. For example, in St. Louis Poster Advertising Co. vs. City of St. Louis, 249 U.S. 269, 274, Mr. Justice Holmes observed that "billboards properly may be put in a class by themselves and prohibited 'in

residence districts of a city in the interest of the safety, moral-
ity, health and decency of the community'." The earlier atti-
tude appears to have been that billboard regulation was simon-
pure æsthetic regulation and as such was condemned. Adverse
public opinion against unsightly signs along highways quite
probably had much to do in the rapid change of legal thought.
This public opinion was not concerned with thought of safety,
morals or welfare. It was occasioned by the disfigurement of
the landscape and by the marring of the beauty of Nature.
Yet the courts, somewhat sophistically, it seems to me, with
many protestations against the use of æsthetic standards, urged
with rather fantastic reasoning that what previously had no
relationship to public safety had now developed into a public
menace which an enlightened community not only had a right
to regulate but, indeed, would be almost wayward in failing to
control. See *Chandler, Attitude of the Law toward Beauty*
(1922) 8 A.B.A.J. 470; *Baker, Aesthetic Zoning Regulations*
(1926) 25 Mich. L. Rev. 124. On what possible theory may
one attempt to warrant the exclusion of a highgrade grocery
store in a residential zone if not on the ground of æsthetics?
Surely, such a store has not the most remote connection with
either public safety, or morals, or comfort, or welfare.

The foregoing, while perhaps somewhat irrelevant to the
basic problems of the present case, furnishes ample ground
for holding, with the authorities, that billboard regulation is
within the police power, regardless of whether one relies on
the reasons to which the courts still cling or on those which
are treated like stepchildren, but which, at least to my satis-
faction, furnish the hidden impelling motive for modern legal
thought.

However, all regulations affecting the use of private property
must be reasonable and it is on this point that I find myself
unable to support the regulation. If the basis for justifying
billboard regulation is the safety of the public, its application
must be to all billboards within the designated area. Let us
assume that the sign on Backiel's property should be pro-
hibited in consideration of public safety. It will be just as
much a menace if he should open a sidewalk stand just to
sell Pepsi-Cola. Yet, under the ordinance, if he engages in
that business, he may erect a billboard of whatever dimensions
he chooses, as long as he advertises Pepsi-Cola. Should he
use the same board to advertise the sale of war bonds, his bill-

board must come down. Thus, the advertising matter appearing on the sign determines its safety to the public. Of course, this is nonsense. In short, the very thing on which the town relies to support the regulation becomes of no moment when the landowner opens up a business. A municipality may not, on the theory of public safety, welfare or whatnot, prohibit my neighbor from erecting a billboard on his land while permitting me to do so, because, perchance, I happen to be selling ice cream cones. The regulation as to billboards is unreasonable; arbitrary and void.

Accordingly, an injunction may enter restraining the defendants from interfering with the plaintiffs' erection of the billboard on the Backiel parcel, the parties having agreed that if an injunction should issue, all defendants should be subjected to it. A mandatory injunction may likewise enter ordering the defendant, John F. Coyle, as building inspector, to issue a permit for the erection of the billboard. A declaratory judgment may also enter holding section 4-B of the zoning ordinance void.