[No. 37162.  Department Two.  September 10, 1964.]

DONALD W. MATHEWSON et al., *Respondents*, v. PETER A. PRIMEAU et al., *Appellants*.*

*James R. Young,* for appellants.

*King & King (Albert A. King,* of counsel), for respondents.

*Reported in 395 P. (2d) 183.

HILL, J.—This is a neighborhood row, being dignified into a cause celebre. The defendants live on a 13-acre tract in rural King County between Kirkland and Redmond. This has been their home since 1948, and here they have raised some 14 children with 11 of them still being at home.

They kept a boar and brood sows. They raised hogs from pigs. It is affirmed, on excellent authority, that "Pigs is Pigs."[1] Pigs become hogs, and neither are deodorized. The defendants also accumulated old automobiles and parts thereof, together with crates, lumber, old boxes, and discarded household appliances. The premises were not sightly.

Two neighbors, whose property had been damaged by trespassing swine and whose aesthetic senses and olfactory organs were affronted by the conditions existing, brought an action to recover their damages and to have limitations placed on defendants' use of their 13-acre tract.

The trial court entered a decree, which was not appealed from, awarding the plaintiffs damages for any physical invasion of their property by the swine, granting a permanent injunction against keeping swine in excess of one boar, two brood sows and their litters not over 6-months old, and directing certain actions to be taken by the defendants with reference to the old automobiles, the crates, etc. Thereafter, the plaintiffs,[2] claiming violations of this decree, had the defendants brought into court on an order to show cause why they should not be found to be in contempt, and the decree modified to enjoin the defendants keeping any swine. It is from the order adjudicating the defendants in contempt and fixing penalties, together with the terms and conditions attached to a purgation from contempt, that this appeal is taken. The wisdom and propriety of the original-unappealed-from decree is not before us.

Counsel, who represented the defendants in the contempt proceedings and on this appeal, did not represent them in

[1] See majority and dissent in *McDonnell & McDonnell v. State* (1963), 62 Wn. (2d) 553, 383 P. (2d) 905.

[2] The plaintiffs were Donald W. Mathewson and his wife and John E. Beheyt and his wife. In the contempt proceedings, only Mr. Beheyt signed an affidavit, and only Mr. Beheyt testified.

the original proceeding and enters the arena handicapped by the prior adjudication of many of the issues which he seeks to raise.

In the original action, the trial court found that part of defendants' property was zoned R-9.6 and the remainder R-6. (This zoning was found to be under the provisions of King County Resolution No. 18801, adopted August 12, 1958, the constitutionality of which is not here attacked.) Both zones primarily authorize single family residences, with R-6 having a minimum lot size of 6,000 square feet, and R-9.6 a minimum lot size of 9,600 square feet.

The trial court further found that defendants had acquired the western part of their property in 1944 (the record shows 1948), and the rest of it was acquired in 1957; and that the defendants had, since the beginning of their occupancy, raised animals of various kinds, including swine, goats, and dogs, and had maintained as many as 100 swine of various ages on said premises. Assuming the validity of the zoning, there was, obviously, a long-established nonconforming use,[3] and there is no suggestion that any notice has ever been given by King County that such use be discontinued within a specific period, as required for the termination of such a use by the present zoning resolution. The trial court specifically refused to find that the immediate neighborhood surrounding defendants' property is predominantly residential in character, and the pictures in evidence establish clearly that it is not. The court did find, however, that the defendants' hogs

" . . . have caused and are causing obnoxious odors to arise from the premises and to pervade the immediate neighborhood, and particularly the property of plaintiffs, impairing plaintiffs' comfort and the enjoyment of their property." (Finding No. 5)

In addition to awarding damages to the plaintiffs for the incidents of actual trespass, the decree contained the following provisions, which it is claimed have been violated by

---

[3]The plaintiffs Beheyt likewise occupy their premises under a nonconforming use, conducting a spraying service therefrom with the usual accumulation of barrels and trucks incident to such a business.

the defendants, and which violations are the basis of the contempt proceeding with which we are presently concerned:

A. "Keeping swine in excess of one boar, and two brood sows and their litters not over six months old." (In the contempt proceeding the trial court found that the defendants had "Kept swine in excess of one boar and two sows, together with their litters of not more than six months of age, altogether amounting to as many as 35 to 40 animals at various times.")

B. "Keeping swine closer than 100 feet from defendants' north property line." (In the contempt proceeding, the finding was that the defendants had "Kept swine closer than 100 feet from defendants north property line, and in particular allowed swine to run at large up to the said property line.")

In addition to thus enjoining the defendants, they had been directed to,

C. ". . . pen their swine within a hog-tight fence and . . . feed and keep them in a sanitary manner, not allowing uneaten food to accumulate in the pen. The swine shall be fed in a trough or other structure, which may, however be moved about within the enclosure from time to time." (In the contempt proceeding, the findings were that the defendants had "Failed to pen their swine within a hog-tight fence," and "Fed their swine in part by dumping waste vegetable products on the open ground and in part by the use of a feeding platform and feeding troughs.")
They had been directed further:

D. "To dispose of such vehicles and parts of vehicles located on their property as are not required for their family use." (In the contempt proceeding, the trial court found that the defendants had "Failed to dispose of such vehicles and parts of vehicles located on their property as were not required for their family use, and in particular kept on their property from six to seven junk automobiles, including automobile bodies, several of which are now partially fenced from public view.");

and to:

E. ". . . limit such crates, lumber, containers, used appliances and other similar objects as may be located on their said property, exposed to public view, to such as are reasonably appurtenant to the residential use of such property." (In the contempt proceeding, the trial court found that the defendants had failed to make such limitation and "in particular maintained numerous piles of stumps, scrap wood, metal, boxes and other objects not reasonably required for the residential use of their property and in full view of the public street and from the property of plaintiffs.")

Based on these findings, *i.e.,* the parenthetical statements A through E, the defendants, by the order of April 4, 1963, here appealed from were:

1. Found in contempt for a wilful failure to comply with the decree of July 20, 1962.

2. Fined $500.

3. Directed to pay to the plaintiffs an attorney's fee of $250.

The trial court also directed the modification of the decree of July 20, 1962 to enjoin the defendants from keeping, or permitting to be kept, swine of any age, provided that one pig may be kept for domestic use; and further provided:

". . . that such pig shall be securely penned at least 100 feet south of the south margin of Northeast 100th Street and east of the west margin of the Seattle transmission line easement."

The contempt order further provided that the defendants may be purged for their contempt and be relieved of the obligation of paying the fine and attorney's fee by: Disposing of all swine kept on their premises in excess of one; removing from their property all automobiles not currently licensed, including automobile bodies and parts of bodies; removing from their property or concealing from view all piles of wood, metals, crates, and other similar materials.

From this order, the defendants appeal urging 12 assignments of error.

■ There is no merit to the assignments of error directed to the findings of fact in the contempt proceeding, which we have quoted or paraphrased in parenthesis under A through E, *supra*. There is substantial evidence that the decree of July 20, 1962, was violated in the respects indicated. Nothing more is required to sustain the findings. *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183, and the long procession of cases which follow in its train.

■ The defendants urge that the finding, that these violations were "wilful and deliberate," is a conclusion of law. Whether it be a fact or a conclusion, it is not necessary to an adjudication of civil contempt. Only "Disobedience of any lawful judgment, decree, order or process of the court" (RCW 7.20.010(5)) need be found in this case to justify a finding of contempt. See *Wright v. Suydam* (1914), 79 Wash. 550, 140 Pac. 578. The disobedience is established.

■ The judgment that the defendants are in contempt is affirmed; however, the court erred in imposing a fine in a greater amount than $100. Authority for punishing civil contempt by a fine is found in RCW 7.20.020,[4] which fixes a maximum fine of $300; but before a fine can exceed $100, it must be proven that

". . . the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, . . ."

There is no such finding; and it does not appear that the right or remedy of the plaintiffs to an action, suit, or proceeding was defeated or prejudiced by the contempt of the defendants. See *Wright v. Suydam, supra; State ex rel. Dye v. Reilly* (1905), 40 Wash. 217, 82 Pac. 287. The fine must be limited to $100.

---

[4] "Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not of those mentioned in RCW 7.20.010(1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars." RCW 7.20.020.

■ Our cases hold that RCW 7.20.100[5] authorizes a judgment for attorney's fees in civil contempt proceedings. *Clausing v. Kassner* (1962), 60 Wn. (2d) 12, 371 P. (2d) 633; *State ex rel. Seattle Bottlers Ass'n v. Flora Co.* (1932), 169 Wash. 120, 13 P. (2d) 467.

The defendants assign error to the trial court's finding that it is not possible to raise pigs on defendants' property without interfering with the reasonable use of adjoining property.

We have examined the affidavit of Mr. Beheyt, which is the basis for the show cause order which brought the defendants into court in the contempt proceeding, and in it there is much about the defendants' violations of the court's order with reference to the number of pigs maintained on the premises, the lack of adequate fencing, the number of junk cars, and the crates and other material scattered about the premises, but there is nothing about offensive odors. Apparently, it was the things that were in "public view" that agitated him. His testimony was likewise primarily devoted to these matters. There was a single statement about objectionable odors which occur "usually on a warm, muggy, damp day." There is no testimony as to how often these "warm, muggy, damp days" occur and we can almost, if not quite, take judicial notice that in our Puget Sound country, where the boast is that the whole outdoors has been air-conditioned, such days are relatively few.

We are here in one of the most difficult areas of equity— the nice balancing of the right of an individual to use his property in a lawful manner for his own purposes, as against the comfort and convenience of his neighbor.

After an interference with comfort and convenience is

---

[5] "If any loss or injury to a party in an action, suit or proceeding prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover of the defendant a sum of money sufficient to indemnify him, and to satisfy his costs and disbursements, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit or proceeding by the aggrieved party for such loss or injury." RCW 7.20.100.

established, there arise the further questions as to whether the lawful, but interfering, use should be enjoined, or whether the payment of damages is adequate compensation for the interference, or whether it is damnum absque injuria.

Our most recent discussion of the issues involved and the rules to be applied will be found in *Jones v. Rumford* (1964), *ante* p. 559, 392 P. (2d) 808. Nothing would be gained by again repeating the lengthy quotations from *Riblet v. Spokane-Portland Cement Co.* (1952), 41 Wn. (2d) 249, 248 P. (2d) 380, which we have already used in *Morin v. Johnson* (1956), 49 Wn. (2d) 275, 280, 300 P. (2d) 569, and *Jones v. Rumford, supra.* These cases contain an adequate statement of the applicable law.

In the latter case, the plaintiffs sought injunctive relief against the continuance of a chicken breeding plant, claiming a nuisance because of offensive odors, flies, insects, and rodents. This was in an agricultural area. The condition complained of was found to exist. The injunction was denied, but $500 damages were awarded (under a 2-year statute of limitations). There was, in that case, an investment of some $50,000 in defendant's plant, and all modern techniques had been used to control the odor, but without success. The case is authority for the proposition that, even where a business is conducted in an area where such business is authorized to be conducted and in the best manner practicable with a sound operation, the owner of the business may still be using his property in an unreasonable manner, so far as certain property owners are concerned, and be liable in damages to those who sustain special injuries.

We have, in the present case, no large capital investment, but we do have a long continued operation of great economic importance to a large family. It has already been extensively curtailed, and the issue is whether it should be eliminated at the behest of two complaining neighbors (or perhaps only one).

There is here, simply nothing to indicate that on a tract

the size of the defendants'[6] that a boar, two brood sows and litters of pigs up to 6 months of age, cannot be kept without being offensive to neighbors on the north side of the property; nor, indeed, is there evidence of offensive odors at the present time except on "warm, muggy, damp days." The original order, so limiting the number of swine on the defendants' premises, was not appealed and can be enforced; but there is no substantial evidence to support the finding that it is not possible to raise pigs on the defendants' property without interfering with the reasonable use of adjoining property.

It is on this finding that the modification of the July 20, 1962 order (by the contempt order of April 4, 1963) is based, which modification deprives the defendants of their right to raise swine of any age. The finding having been erroneously entered, it follows that the modification order should not have been entered.

As said in *Crabtree v. City Auto Salvage Co.* (1960), 47 Tenn. App. 616, 633, 340 S. W. (2d) 940, 948,

" . . . a lawful business will not be enjoined without a clear showing that it is impossible or impracticable to eliminate its offensive features. . . ."

In that case, the court said that while the evidence did not preponderate against the Chancellor's finding as to "noise, odors and dust," he was not, on the record presented, justified in enjoining the operation of the business as a nuisance, because there was no showing that it was impracticable to eliminate the offensive features.

Having completed a consideration of so much of the appeal, as relates to hogs and pigs, we turn our attention to the aesthetic phase of the case.

The defendants have not obeyed the portions of the decree of July 20, 1962, directing the disposal of the

" . . . vehicles and parts of vehicles located on their property as are not required for their family use."

---

[6] This 13-acre tract has an east-west dimension in excess of 1220 feet. The western half has a north-south dimension of 335 feet; and the eastern half has a north-south dimension of 288 feet.

Nor have they limited

". . . Such crates, lumber, containers, used appliances and other similar objects as may be located on their said property, exposed to public view, to such as are reasonably appurtenant to the residential use of such property."

The trial court seeks by the contempt order of April 4, 1963, here appealed from, to enforce these two provisions by making their performance (in substance) a part of the conditions whereby the defendants may purge themselves of contempt, and thus save the amount of the fine and attorney's fee imposed upon them. Error is assigned to this form of purgation.

While these orders were not appealed from, it is our view that, except for the circumstance[7] hereinafter indicated, the trial court was clearly exceeding its authority when those portions of the decree of July 20, 1962 were entered, and that they constitute an unauthorized interference with the defendants' use of their property at the behest of the plaintiffs and for their benefit on the basis of purely aesthetic considerations.

That a thing is unsightly or offends the aesthetic sense of a neighbor, does not ordinarily make it a nuisance or afford ground for injunctive relief. *Haehlen v. Wilson* (1936), 11 Cal. App. (2d) 437, 54 P. (2d) 62; *Livingston v. Davis* (1951), 243 Iowa 21, 50 N. W. (2d) 592, 27 A.L.R. (2d) 1237; *Feldstein v. Kammauf* (1956), 209 Md. 479, 121 A. (2d) 716; *Crabtree v. City Auto Salvage Co.* (1960), 47 Tenn. App. 616, 340 S. W. (2d) 940; *Vermont Salvage Corp. v. Village of St. Johnsbury* (1943), 113 Vt. 341, 34 A. (2d) 188.

The latter case construes a statute enacted as an exercise of the police power and holds that the mere fact that a thing is unsightly, and thus offends the aesthetic sense, furnishes no valid ground for a declaration by the legislature that it is a nuisance.

It is, however, unquestioned that,

"Under a liberalized construction of the general welfare purposes of state and federal constitutions, there is a trend

---

[7]See page 939.

in the modern decisions (which we approve) to foster, under the police power, an aesthetic and cultural side of municipal development—to prevent a thing that offends the sense of sight in the same manner as a thing that offends the senses of hearing and smelling. . . ." *General Outdoor Advertising Co. v. Indianapolis* (1930), 202 Ind. 85, 93, 172 N. E. 309, 72 A.L.R. 453.

However, the great weight of authority up to the present time is that there is, to quote Judge Kenna,[8]

". . . a clear and most decided difference between direct control by the courts through the process of injunction on the one hand, and the control exercised by the legislative branch through the use of the police power on the other."

He also emphasizes that injunctive action for aesthetic reasons, not based on legislative action (by state, county, or city),

". . . is a great enlargement of the powers of the courts over the properties and customs of the people, and it constitutes an encroachment by the courts into a field that should be occupied by the direct legislative representatives of the people. . . ." *Parkersburg Builders Material Co. v. Barrack, supra* (p. 618)

As we have made clear, we are not here concerned with the enforcement of a zoning ordinance or with an area that is residential in character. We see here no reason for the intervention of equity on this phase of the case.

█ The saving circumstance,[9] relied upon, is that these orders were based on a finding that the defendants "have agreed"

"To dispose of such vehicles and parts of vehicles located on their property as are not required for their family use,"

and

"To limit such crates, lumber, containers, used appliances and other similar objects as may be located on their said property, exposed to public view, to such as are reasonably appurtenant to the residential use of such property."

[8] Concurring opinion in *Parkersburg Builders Material Co. v. Barrack* (1937), 118 W. Va. 608, 615, 192 S. E. 291, 110 A.L.R. 1454.
[9] See page 938.

From this, the trial court concluded that "Plaintiffs are entitled to an injunction" requiring the defendants to carry out the agreement set forth in the finding.

Assuming that the defendants made such an agreement with the plaintiffs (which the defendants now deny, and for which no consideration is alleged), it does not follow, as the trial court concluded, that the plaintiffs are entitled to have it enforced by the equity power of the court.

The trial court, by the decree of July 20, 1962, stated:

" . . . The court retains jurisdiction of this cause and after said date [August 18, 1962], any party may request the court to review the findings of fact, conclusions of law or decree."

At the same time that the court was asked by the plaintiffs to find the defendants in contempt, the defendants were asking the court to dissolve the injunction. This the court refused to do and, as part of the order here appealed from, it denied the defendants' motion to dissolve the injunction. Error is assigned to its failure so to do.

We are satisfied, for the reasons which we have indicated, that the motion to dissolve the injunction should have been granted insofar as it required the defendants,

"To dispose of such vehicles and parts of vehicles located on their property as are not required for their family use,"

and

"To limit such crates, lumber, containers, used appliances and other similar objects as may be located on their said property, exposed to public view, to such as are reasonably appurtenant to the residential use of such property."

SUMMARY:

The adjudication of contempt is affirmed; the fine is reduced to $100, and affirmed in that amount; the attorney's fee of $250 is affirmed.

The proposed modification of the decree of July 20, 1962, by prohibiting the keeping of swine, cannot be sustained.

The cause is remanded with instructions to modify the order of April 4, 1963, by granting the motion to dissolve

the injunction in part, *i.e.,* insofar as it requires the defendants to:

". . . dispose of such vehicles and parts of vehicles located on their property as are not required for their family use,"

and

"To limit such crates, lumber, containers, used appliances and other similar objects as may be located on their said property, exposed to public view, to such as are reasonably appurtenant to the residential use of such property."

All of the things which the defendants were required to do to purge themselves of contempt and be relieved of the obligations of paying the fine and attorney's fee are, by our action here, made unnecessary; and the trial court may desire to designate other terms of purgation, and the cause is also remanded for that purpose. Should the trial court impose a new condition for purgation, a question raised sua sponte by the court should receive consideration, *i.e.,* after an award of an attorney's fee is made to a party under RCW 7.20.100, can the court relieve the party in contempt from the payment thereof on his purging himself of contempt. The attorney's fee is not a punishment, but an indemnification provided by statute to the party who instituted the contempt proceeding.

The defendants-appellants have prevailed to a considerable extent on this appeal, but the plaintiffs-respondents have also prevailed to a more limited extent. It would put an undue portion of the appellate costs on the appellants were we to allow each party to bear their own costs; we, therefore, direct that the respondents pay one-half the cost of the transcript and of the statement of facts to the appellants, and, other than that, the appellants and respondents will each bear their own costs on this appeal.

OTT, C. J., WEAVER and HALE, JJ., and EDGERTON, J. Pro Tem., concur.